UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FSP STALLION 1, et al., | |
| Plaintiffs, | 2:08-CV-01155-PMP-PAL |
| v. | |
| MICHAEL F. LUCE, et al., | ORDER |
| Defendants. | |

Presently before the Court is Defendants' Motion to Dismiss Plaintiffs' Complaint (Doc. #47), filed on November 4, 2008. Defendants Michael Luce, Joe Munsch, Fairway Signature Properties LLC, Evergreen Alliance Golf Limited, LP, and Stallion Mountain LeaseCo, LLC filed a Joinder (Doc. #48) on November 4, 2008. Plaintiffs filed an Opposition (Doc. #52) on December 1, 2008. Defendants filed a Reply (Doc. #65) on December 23, 2008.

**I. BACKGROUND**

Plaintiffs are twenty-six separate and independent limited liability companies. (Compl. at 3.) Plaintiffs were investment vehicles which invested in tenant-in-common ("TIC") interests in the Stallion Mountain Country Club ("Stallion Mountain") located in Las Vegas. (Id. at 6.) Defendant Golf Club of Nevada, Inc. ("Golf Club") operated Stallion Mountain from 1997 through February 2006. (Id. at 8.) Defendant William Walters ("Walters") is Golf Club's president and director. (Id.) Defendant Michael F. Luce ("Luce") co-owns Golf Club with Walters. (Id. at 9.) Defendant Joe R. Munsch ("Munsch") is a business associate of Walters and Luce, and the president of Defendant

1  Evergreen Alliance Golf Limited, L.P. ("EAGL"), a golf course management company
2  located in Texas that did business with Walters, Luce, and The Walters Group companies.
3  (Id. at 4, 9.)
4        Plaintiffs allege that in 2005, Walters, Luce, and Munsch conspired to
5  fraudulently induce investors to purchase Stallion Mountain at an inflated price through a
6  private placement of TIC interests in the property. (Id.) To effectuate the scheme,
7  Defendants developed a private placement memorandum ("PPM") which offered up to
8  $24,480,000 in TIC interests. (Id.) The offering was structured such that Golf Club would
9  sell Stallion Mountain to Defendant Fairway Signature Properties, LLC ("Fairway"), an
10 entity controlled by Luce and Munsch and created specifically for the purpose of sponsoring
11 the private placement and selling TIC interests to investors. (Id.) Under the PPM, the TIC
12 investors would lease Stallion Mountain to Defendant Stallion Mountain LeaseCo, LLC
13 ("LeaseCo"), a company also owned and controlled by Luce and Munsch. (Id.) LeaseCo
14 would be the master tenant under a lease agreement with the investors. (Id.) Under the
15 seven-year lease agreement, LeaseCo would operate the business, receive all revenue, and
16 pay all expenses. (Id.) LeaseCo would pay rent to the investors in the form of debt service
17 payments and a return on the equity investment. (Id.) LeaseCo was to hire EAGL as
18 property manager. (Id. at 10-11.)
19       According to the Complaint, Walters, Luce, Munsch, and their respective entities,
20 Golf Club, EAGL, Fairway, and LeaseCo, played a significant role in drafting and
21 preparing the PPM. (Id. at 10.) Additionally, Plaintiffs allege that based on experience
22 gained from running Stallion Mountain for several years, Golf Club, Walters, and Luce
23 were familiar with Stallion Mountain's financial performance, historic growth rate, revenue
24 potential, and risk factors. (Id. at 8-9.) Plaintiffs also allege Golf Club, Walters, and Luce
25 operated other golf courses in Las Vegas and hence were familiar with market conditions.
26 (Id.) Plaintiffs contend that Munsch was experienced in operating golf courses nationally

and in Las Vegas. (Id. at 9.)

Plaintiffs allege the PPM contained a variety of false statements and omissions, including Exhibit G to the PPM, which contains historical economic performance representations for Stallion Mountain from September 2004 through August 2005 (the "Historical Performance Representations"), and the Cash Flow Projections. (Id. at 13.) Plaintiffs contend the Historical Performance Representations and the Cash Flow Projections were misleading because Defendants failed to disclose information and documents in their possession which contradicted these representations.

In particular, Plaintiffs allege Defendants possessed internal operating budgets[1] for Stallion Mountain prepared in November 2005, around the same time as the PPM was being prepared, which contained revenue and cash flow figures that were materially lower than those in the Cash Flow Projections. (Id. at 13-14, ¶ 42.) The Complaint also alleges Defendants possessed a June 2005 appraisal of Stallion Mountain performed by PriceWaterhouseCoopers ("PWC Appraisal"). (Id. at 14, ¶ 43.) According to the Complaint, the PWC Appraisal stated the Las Vegas market would experience minimal growth over the short term and that it was unlikely the market would experience comparable growth in the next few years. (Id.) In contrast, the Cash Flow Projections used double digit income growth rates. (Id.) Additionally, the PWC Appraisal projected significantly fewer golf rounds purchased each year from 2007 through 2010 than did the Cash Flow Projections. (Id.) The PWC Appraisal indicated net operating income was down 73% from April 2004 through March 2005, yet the Cash Flow Projections show substantial increases for each year in the future. (Id. at 14-15.) The PWC Appraisal also contained data showing

---

[1] Plaintiffs attach the alleged internal operating budget to their opposition. The parties dispute when the document was prepared and whether the Court ought to consider the exhibit. The Court need not consider the exhibit at this stage of the proceedings because the Complaint alleges the existence and contents of the alleged internal operating budget.

3

declining membership at Stallion Mountain, which was not disclosed to Plaintiffs.  (Id. at 15.)

In February 2006, Golf Club sold Stallion Mountain to Fairway for $22,675,000. (Id. at 19.)  Through April, May, and June 2006, Fairway sold the TIC interests to Plaintiffs. (Id.)  From April 2006 to June 2007, LeaseCo paid the rents as provided in the lease.  (Id.) However, in June 2007, LeaseCo ceased paying rent.  (Id.)  Upon LeaseCo ceasing payments, Plaintiffs learned Stallion Mountain had been operating at a deficit from its inception.  (Id. at 20.)  Because LeaseCo was not paying EAGL's management fees, EAGL served notice of its intent to cease managing Stallion Mountain.  (Id.)  LeaseCo and EAGL failed to make a loan payment resulting in default.  (Id.)

Based on these and other allegations, Plaintiffs bring federal claims for securities fraud against Walters, Luce, Munsch, Fairway, LeaseCo, Golf Club, and EAGL (count one) and control person liability against Walters, Luce, and Munsch (count two).  Plaintiffs also bring several supplemental state law claims.

Defendants move to dismiss the federal securities claims and request the Court decline to exercise supplemental jurisdiction over the state law claims.  With respect to the federal securities claims, Defendants argue Plaintiffs do not identify any false statements in the PPM, but instead allege that the actual performance did not meet the projections. Defendants argue fraud by hindsight does not state a claim.  Defendants also argue the "bespeaks caution" doctrine bars Plaintiffs' claims because the PPM contained sufficient cautionary language to protect Defendants from securities fraud claims.  Defendants contend Plaintiffs fail to plead scienter under the Private Securities Litigation Reform Act ("PSLRA").  Defendants argue that because Plaintiffs fail to state a primary securities claim, their control person claim also fails.  Additionally, Defendants request the Court decline to exercise supplemental jurisdiction if the Court dismisses the federal claims.

///

4

Plaintiffs respond that they identify several specific misrepresentations and they have shown each of these is false because Defendants contemporaneously had in their possession documents projecting substantially lower numbers and more negative trends which Defendants did not disclose. Plaintiffs further assert they adequately alleged scienter based on Defendants' knowledge and experience running Stallion Mountain as well as their possession of actual contrary evidence at the time they made the representations and omissions in the PPM. As to the bespeaks caution doctrine, Plaintiffs argue that the doctrine does not give Defendants license to lie or mislead. Finally, Plaintiffs argue that because the Court should not dismiss the substantive securities claim, the Court should not dismiss the control person claim or the supplemental state law claims.

## II. MOTION TO DISMISS

### A. Pleading Fraud With Particularity

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." A party bringing a claim under Rule 10b-5 and section 10(b) must plead the claims with particularity under Rule 9(b). In re Daou Sys., Inc., 411 F.3d 1006, 1014 (9th Cir. 2005). To satisfy this burden, the complaint "'must set forth more than the neutral facts necessary to identify the transaction.'" Yourish v. Cal. Amplifier, 191 F.3d 983, 993 (9th Cir. 1999) (footnote omitted) (quoting In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)). The "neutral facts" mean the "'time, place, and content of an alleged misrepresentation.'" Id. at 993 n.10 (quoting GlenFed, 42 F.3d at 1547-48). In addition to pleading these neutral facts, the plaintiff "'must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading.'" Id. (quoting GlenFed, 42 F.3d at 1548); see also 15 U.S.C. § 78u-4(b)(1).

///

"Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b), makes it unlawful 'for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe[.]'" In re Daou Sys., Inc., 411 F.3d at 1014. Pursuant to section 10(b), the SEC promulgated Rule 10b-5, which makes it unlawful:

> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. A projection becomes a "'factual' misstatement if (1) the statement is not actually believed, (2) there is no reasonable basis for the belief, or (3) the speaker is aware of undisclosed facts tending seriously to undermine the statement's accuracy." Provenz v. Miller, 102 F.3d 1478, 1487 (9th Cir. 1996) (quotation and emphasis omitted); In re VeriFone Sec. Litig., 11 F.3d 865, 870-71 (9th Cir. 1993).

The Complaint identifies the time and location of the alleged misrepresentations as the PPM offering. The Complaint identifies Walters, Luce, Munsch, and their entities, Fairway, LeaseCo, Golf Club, and EAGL, as substantial participants in drafting and preparing the PPM.

As to what is false and why it is false, Plaintiffs identify several specific statements and omissions. First, Plaintiffs identify the Historical Performance Representations, and specifically the statement that Stallion Mountain had a net operating income of $1,358,950 from September 2004 through August 2005. Although Plaintiffs refer to the fact that Stallion Mountain did not meet the projections in 2006 and 2007, Plaintiffs do not rely solely on post-purchase performance to demonstrate falsity. Rather, Plaintiffs note that the PWC Appraisal listed net operating income of only $492,535 for the

6

period of April 2004 through March 2005. These periods do not exactly overlap, but they share seven months worth of common data. Yet the PWC Appraisal is over $800,000 less in net operating income than the Historical Performance Representation. Plaintiffs argue that it is highly unlikely that the five month period from April 2005 through August 2005 would have generated sufficient net operating income to make the Historical Performance Representation accurate, particularly because all indications are that net operating income at Stallion Mountain has been decreasing, not increasing, as shown through the post-purchase performance.

Next, Plaintiffs identify the Cash Flow Projections as misleading because the PPM uses the Historical Performance Representation as a starting point, materially affecting the Cash Flow Projections that rely on those numbers. Furthermore, Plaintiffs allege the PPM projected revenues of over $6 million while a contemporaneous internal budget for Stallion Mountain projected total revenues of under $5 million. Additionally, the PPM projected a positive net cash flow of over $50,000 in the first year, yet the internal operating budget projected a negative cash flow of nearly $700,000. Additionally, the Cash Flow Projections projected net operating income to increase each year, but the PWC Appraisal showed net operating income was down 73% in 2004 and down 43% from April 2004 through March 2005. Finally, Plaintiffs allege the PPM projected substantially higher numbers of golf rounds for the first three years of operation than did the PWC Appraisal, and failed to disclose the negative trend in the PWC Appraisal of declining membership.

Plaintiffs thus allege the PPM Cash Flow Projections were false because Defendants had in their possession documents suggesting those numbers were false, inflated, and unreasonably predicted dramatic turnarounds in trends. While projections normally are non-actionable predictions, Plaintiffs allege Defendants were aware of undisclosed facts tending seriously to undermine the Cash Flow Projections' accuracy. Plaintiffs adequately have alleged fraud with particularity. The Court will deny

7

Defendants' motion to dismiss on this basis.

**B. Scienter**

Under Federal Rule of Civil Procedure 9(b) "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." However, the PSLRA requires that where state of mind is a required element, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4 (b)(2). To prove a primary violation of Section 10(b) of the Securities Exchange Act, the plaintiff must show, among other things, scienter. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005). The requisite scienter for a 10(b) claim is "'a mental state embracing intent to deceive, manipulate, or defraud.'" S.E.C. v. Rubera, 350 F.3d 1084, 1094 (9th Cir. 2003) (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194 n.12 (1976)).

To determine whether a complaint supports a strong inference of scienter, the Court accepts as true all factual allegations in the complaint and considers the complaint in its entirety, including documents incorporated into the complaint by reference and matters subject to judicial notice. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S. Ct. 2499, 2509 (2007). "The inquiry . . . is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Id. (emphasis omitted). "[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." Id. Thus, the court considers "plausible nonculpable explanations for the defendant's conduct" in addition to inferences favoring the plaintiff. Id. at 2510.

"The inference of scienter must be more than merely 'reasonable' or 'permissible'-it must be cogent and compelling, thus strong in light of other explanations." Id. Ultimately, the court asks, "When the allegations are accepted as true and taken

1  collectively, would a reasonable person deem the inference of scienter at least as strong as
2  any opposing inference?" Id. at 2511.  An example of evidence of scienter is alleging
3  "inconsistent contemporaneous statements or information (such as internal reports) which
4  were made by or available to the defendants." In re GlenFed, 42 F.3d at 1549.
5        Plaintiffs allege Defendants Walters, Golf Club, and Luce had detailed
6  information about Stallion Mountain's operations because they operated the club for several
7  years prior to the sale.  Additionally, Plaintiffs allege all Defendants had experience and
8  knowledge of the Las Vegas golf market through their operation of other golf clubs in the
9  city.  Plaintiffs further allege Defendants had in their possession at the time they were
10 crafting the PPM contrary negative information in the form of the PWC Appraisal and the
11 internal operating budget.  Viewing the Complaint's allegations collectively, Plaintiffs
12 adequately have alleged facts supporting a strong inference of scienter.  The Court therefore
13 will deny Defendants' motion to dismiss on this basis.
14       **C.  Bespeaks Caution**
15       The bespeaks caution doctrine permits a court to rule as a matter of law that a
16 defendant's forward-looking representations contained sufficient cautionary language or
17 risk disclosure to protect the defendant against a securities fraud claim.  Provenz, 102 F.3d
18 at 1493; In re Worlds of Wonder Sec. Litig., 35 F.3d 1407, 1413 (9th Cir. 1994).  The
19 doctrine is designed to address the statement's materiality and the reasonableness of the
20 plaintiff's reliance on optimistic projections when those projections are coupled with
21 sufficiently particular cautionary language.  In re Worlds of Wonder, 35 F.3d at 1414.
22       To determine whether the "bespeaks caution" doctrine immunizes a defendant's
23 allegedly false statements, the court examines any cautionary statements the defendant
24 made.  Provenz, 102 F.3d at 1493.  "The cautionary statements must be 'precise' and
25 'directly address[ ] . . . the [defendants'] future projections." Id. (quoting In re Worlds of
26 Wonder, 35 F.3d at 1414). "Blanket warnings that securities involve a high degree of risk

[are] insufficient to ward against a federal securities fraud claim." Id. (quotation omitted).

To prevent defendants from attempting to insulate false statements with cautionary language, the doctrine applies "only to precise cautionary language which directly addresses itself to future projections, estimates or forecasts in a prospectus." In re Worlds of Wonder, 35 F.3d at 1414 (quotation omitted). This Court declined to apply the bespeaks caution doctrine to a prospectus that included cautionary language that there could be no assurances that sufficient cash flow would exist to meet expenses. In re Stratosphere Corp. Sec. Litig., 1 F. Supp. 2d 1096, 1117-18 (D. Nev. 1998). The plaintiffs alleged specific cost overruns and construction delays of which the defendants were aware and which necessarily would affect operating revenues. Id. Thus, general cautionary language about the risks inherent in every construction enterprise did not immunize their misstatements. Id. The Court should not grant a motion to dismiss based on the bespeaks caution doctrine unless the defendant's challenged document includes enough cautionary language or risk disclosure that "reasonable minds could not disagree that the challenged statements were not misleading." In re Stac Elec. Sec. Litig., 89 F.3d 1399, 1408 (9th Cir. 1996) (quotation omitted).

Although the PPM contains cautionary language and a listing of risk factors, Plaintiffs allege Defendants knew or had reason to believe the Cash Flow Projections were not accurate because they knew the Historical Performance Representations which were the starting point were false. Additionally, Plaintiffs allege Defendants had in their possession but did not disclose the PWC Appraisal and the internal budget which contained materially different calculations of net operating income, projected income, projected growth, projected golf rounds, and trends regarding net operating income and declining membership. However, the cautionary language did not advise investors that Defendants had contrary information or that Defendants did not actually believe the projections. Additionally, the PPM couches Defendants' assumptions as "reasonable" and based on

"historical" performance or trends, yet according to the Complaint the PWC Appraisal and internal operating budget suggest the assumptions were not reasonable and were contrary to historical performance and trends. The Court therefore will deny Defendants' motion to dismiss on this basis.

### D. Remaining Claims

Defendants' motion to dismiss the remaining claims relies upon the dismissal of the primary securities claim. Because the Court will deny Defendants' motion to dismiss the primary securities claim, the Court will deny Defendants' motion to dismiss the control person federal securities claim as well as the supplemental state law claims.

## III. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Plaintiffs' Complaint (Doc. #47) is hereby DENIED.

DATED: May 1, 2009

_____
PHILIP M. PRO
United States District Judge