**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| FSP STALLION 1, LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:08-cv-01155-PMP-PAL |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| MICHAEL F. LUCE, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The court conducted a status and dispute resolution conference on July 14, 2009 at 10:00 a.m. Adam Thurston appeared telephonically on behalf of the plaintiffs, and Kimberly McGhee and Kyle Stephens appeared on behalf on behalf of the defendants.

During a hearing conducted June 9, 2009, the court reviewed the parties' Joint Report of Early Meeting of Counsel and Proposed Discovery Plan and Scheduling Order (Dkt. #74) and questioned counsel concerning their discovery needs and whether they had any disputes.  Counsel for plaintiffs advised the court that they had a dispute concerning whether or not the defendants should be required to produce electronically stored information ("ESI") in electronic format with metadata intact.  The court directed the parties to meet and confer with respect to their disputes concerning ESI and indicated a status conference and dispute resolution conference would be conducted if the parties were unable to resolve their dispute.  The parties were directed to file a joint status report outlining their respective positions so that the court could resolve the matter without the necessity of formal briefing.

The parties met and conferred as ordered and reached certain agreements but have disputes concerning whether defendants should be ordered to produce ESI in two categories: (1) accounting data in native format; and (2) metadata associated with electronic documents such as e-mails.  Plaintiffs seek the production of historical accounting information related to Stallion Mountain from 1997 to

1    2006[1].  Defendants have agreed to produce a portion of this accounting information in native electronic

2    form but have refused to produce accounting information prior to 2004.  Plaintiffs claim accounting

3    information for this nine-year period is relevant to claims made in the complaint that Stallion Mountain

4    was owned and operated by Golf Club and its principals, including Walters and Luce, who were in

5    possession of all detailed financial, operational, and market information relating to Stallion Mountain.

6    Plaintiffs allege in the complaint that Golf Club and its principals made false and misleading statements

7    and omissions concerning the financial condition of the Golf Club and should, therefore, be ordered to

8    produce all electronic accounting data from 1997 forward in native IBS, Accpac, and Great Plains

9    format, the formats they have agreed to use for post-2004 accounting data.

10        Plaintiffs also seek the production of metadata for documents responsive to requests for

11   production of documents served June 26, 2009 and for the documents exchanged in the initial

12   disclosures which were produced on CD ROMs in TIFF or PDF format.  Plaintiffs claim they advised

13   the defendants as early as November 6, 2008 at a meeting of counsel that they sought ESI in discovery

14   in native format or with metadata intact.  Defendants, however, chose to produce their initial

15   disclosures in a form in which they were not ordinarily maintained nor in a reasonably usable form.

16   Plaintiffs have offered a compromise by limiting the production of responsive documents in the form of

17   TIFF images or other agreed-upon file formats with the following associated metadata:

18        1.    cross-reference file

19        2.    metadata fields consisting of:

20            a.    beginning and end page
             b.    number of pages
21            c.    attachment range
             d.    grouping field
22            e.    send and receive dates (for e-mails)
             f.    send and receive times (for e-mails)
23            g.    to, from, cc, bcc (for e-mails)
             h.    subject line (for e-mails)
24            i.    file creation, modification, and last access dates (for files other an e-mail)

25

26        [1] Page 5 of the Joint Status Report indicates plaintiffs seek production of historical accounting

27   information relating to Stallion Mountain from 1997 - 2008.  However, the property was sold to the
     plaintiffs in 2006, and throughout the rest of the plaintiffs' portion of the status report plaintiff refers to

28   obtaining the records for the nine year period beginning in 1997.

j.      file path
k.      file name
l.      document type (identified by signature)
m.      source/custodian

3.    OCR file

Plaintiffs cite a number of cases, as well as the Advisory Committee notes to the 2006 amendments to Rule 34 in support of their positions.  Plaintiffs argue the federal courts routinely require the production of metadata particularly where a party has made an early demand for metadata. Plaintiffs point out that a number of decisions and  comments to the federal rules have required a responding party to produce documents in a reasonably usable form even in circumstances in which the requesting party did not specify the desired format for production.  Plaintiffs also cite cases holding that the mere fact a party has already produced documents does not relieve the party of its ESI obligations and that any claim that a second production would be unduly burdensome should be rejected because the defendants, who chose the format in which to make their initial disclosures, did so at their own risk.

Finally, plaintiffs argue the court should require the defendants to produce the OCR file for documents because the Advisory Committee's notes clearly provide that "if the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature." Rule 34 Advisory Committee Notes to 2006 Amendments.  Any claim that the OCR file would reveal privilege can be addressed by appropriate redaction which commonly occurs when producing ESI in discovery.

Defendants respond that they agreed at the November 6, 2008 Rule 26(f) conference that electronically-stored information should be produced in electronic form, *i.e.*, either in PDF format on a CD or portable hard drive but dispute that there was any discussion or agreement concerning what types of metadata would be produced or be subject to privilege.  Defendants acknowledge that plaintiffs took the position at the early case conference that ESI should be produced in native format with metadata intact.  Defendants produced their initial disclosures May 18, 2009.  The Walters defendants produced documents which were Bates-labeled in PDF format on a DVD and a one hundred eighty-one page privileged document log.  The Luce defendants produced documents that were Bates-labeled and

3

1   produced in PDF format on a CD ROM.  Plaintiffs produced their initial disclosures on May 19, 2009.

2   Plaintiffs' documents were Bates-labeled and produced in TIFF format on CD ROM disks.

3       Defendants claim that at the June 8, 2009 discovery hearing, plaintiffs claimed for the first time

4   that they were not satisfied with the manner in which the defendants had produced their documents in

5   the initial disclosures.  On June 29, 2009, defendants' counsel, Ms. McGhee, sent a letter to plaintiffs'

6   counsel, Messrs. Thurston and Fife, requesting that plaintiffs detail what ESI they were seeking.

7   Plaintiffs did not respond until June 30, 2009.  The parties met and conferred on July 2, 2009, at a

8   dispute resolution conference and were able to agree that defendants would produce some documents in

9   native format.  In a footnote, defendants assert that they were not aware until receiving plaintiffs' draft

10   of the joint status report that the parties had a dispute concerning the relevant time period for

11   accounting data requested by plaintiffs.

12       On June 26, 2009, plaintiffs served defendants with eight sets of document requests.  The

13   majority of the documents requested are duplicative of documents produced in defendants' initial

14   disclosures.  The parties have been unable to agree concerning reproduction of any documents that were

15   previously produced by the defendants in their initial disclosures, with the exception of Microsoft Excel

16   spreadsheets which the parties have agreed to produce in native format.

17       The parties have also been unable to agree concerning which metadata fields, if any, would be

18   produced in newly-produced documents.  Defendants object to producing the beginning and end page,

19   number of pages, attachment range, grouping field, file creation, modification, and last access dates, file

20   path, file name, document type, and source/custodian metadata fields.  Defendants assert these fields are

21   not relevant or discoverable.  Defendants also object to producing the OCR field asserting it is

22   irrelevant and contains potentially privileged information.  The defendants urge the court to find that the

23   burden or expense of the discovery requested by the plaintiffs is outweighed by its likely benefit, citing

24   the provisions of Fed. R. Civ. P. 26(b)(2)(iii).  Defendants also ask the court to limit the discovery

25   requested by finding that "the discovery sought is unreasonably cumulative or duplicative, or is

26   obtainable from some other source that is more convenient, less burdensome, or less expensive."  Citing

27   Fed. R. Civ. P. 26(b)(2)(C)(i).

28   / / /

1    Defendants acknowledge that metadata is discoverable if relevant to a claim or defense.

2    However, defendants cite a line of cases, finding that for most documents metadata does not provide

3    relevant information or is of limited value in comparison to the cost of its production.  Some courts

4    have, therefore, required that the requesting party show a particularized need for metadata.  In this case,

5    defendants assert plaintiffs have not made any showing that metadata is relevant with the exception of

6    accounting information, only that it is useful in document review.

7    Defendants claim that if plaintiffs wish to sort or search documents, they can utilize a

8    Concordance or Summation software or send the documents to a third-party vendor to have them

9    scanned in OCR format and loaded onto an electronic database.  The defendants are particularly

10   concerned with producing any OCR fields which contain searchable text of a document because a

11   substantial amount of privileged communications are contained in e-mails produced by the Walters

12   defendants.  Although the Walters defendants have redacted privileged materials, the redactions do not

13   remove the underlying privileged text from the OCR file unless the privileged text is also manually

14   removed.  Thus, if the Walters defendants are compelled to produce the OCR field for a privileged

15   document, this field will necessarily include the intact privileged text.  The Luce defendants' e-mails

16   also include a substantial amount of privileged communications, and the Luce defendants do not have

17   the computer software used by the Walters defendants to redact e-mails.  The Luce defendants,

18   therefore, did a manual review and production of their documents in PDF format.  Additionally,

19   because the Luce defendants do not have computer software which will allow them to extract certain

20   OCR fields and rely on Adobe Acrobat software for their review and production, they would be

21   required to either withhold all OCR fields or produce privileged information.

22   Defendants acknowledge that the parties are required to discuss the preservation and production

23   of discoverable information at the Rule 26(f) conference and that a requesting party may specify the

24   form of ESI it seeks.  However, in the event the parties are unable to agree to a format for ESI,

25   Rule 34(b) allows the responding party to produce information either in the form in which it is

26   ordinarily maintained or in a form that is reasonably usable unless otherwise ordered by the court.

27   Defendants assert that the "default standard" for production of ESI is in PDF or TIFF format, citing

28   Wyeth v. Impax Labs, Inc., 248 F.R.D. 169, 171 (D. Del. 2006).  The parties did not agree to any form

1  of ESI production, and plaintiffs did not request any other form prior to defendants' collection and

2  production of their initial disclosures.  Additionally, the plaintiffs themselves produced their initial

3  disclosures in PDF or TIFF format.  Thus, plaintiffs should not be heard to complain about the format

4  in which the defendants produced their initial disclosure documents.  Defendants contend that it was

5  plaintiffs' responsibility to specify at the Rule 26 conference the format in which they wished ESI to be

6  produced and failed to do so.  Thus, the court should not require the defendants to duplicate their efforts

7  and bear additional costs to reproduce the documents in ESI format.

8  Defendants claim that the burden or expense of producing ESI here is undue because it

9  outweighs its likely benefit.  However, if the court orders production of the same information in a

10  different format a second time, the court should shift some or all of the cost of reproduction to the

11  plaintiffs.  The defendants cite Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 318 (S.D.N.Y. 2003),

12  for the proposition that in evaluating whether to shift costs, the court should consider the needs of the

13  case, the amount in controversy, the parties' resources, the importance of issues at stake in the

14  litigation, and the importance of the proposed discovery in resolving the issues.

15  The Walters defendants filed a supplement to the joint status report concerning the relevant time

16  period for the production of accounting data in native format.  The supplement outlines the history of

17  the golf course and relates that between 1997 and 1999 Golf Club purchased Sunrise Country Club and

18  changed its name to Stallion Mountain Country Club.  At the time of its purchase it consisted of three

19  18-hole golf courses.  However, in February 2004 the Golf Club entered into an agreement with Pulte

20  for sale of a portion of the land which resulted in the closure of two of the three golf courses.  Golf Club

21  owned and operated Stallion Mountain as one golf course country club from February 2004 until the

22  time of its sale to the plaintiffs in March 2006.  The Walters defendants agreed to produce accounting

23  data in its native format for 2004 to 2006, but argue that accounting data prior to February 2004 "will

24  serve no purpose in this action".  The Walters defendants argue that the plaintiffs' complaint allegations

25  involve misrepresentations concerning revenues from the period of September 2004 through August

26  2005.  Therefore, accounting data dating back to 1997 cannot be relevant to any of the claims or

27  defenses in this matter.  This is especially true because two of the three active golf courses were closed

28  so the comparison of sales in prior years will not yield relevant evidence.

6

Having reviewed and considered the parties submissions and arguments of counsel at the time of the hearing,

IT IS ORDERED:

1.     Defendants shall produce historical accounting data in native format for the years 2002 through 2006.

2.     Defendants shall be required to produce ESI responsive to plaintiffs' request for documents in the form of TIF images or other agreed upon file format with the associated metadata described in plaintiffs portion of the parties' Joint Status Report on Disputes (Dkt. #300, pg. 9) and the OCR file.  However, any documents which have been redacted may be scanned as redacted to preserve privilege.

Dated this 20th day of July, 2009.


_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

7