DENNIS L. KENNEDY
Nevada Bar No. 1462
KIMBERLY R. MCGHEE
Nevada Bar No. 9728
CRAIG A. HENDERSON
Nevada Bar No. 10077
BAILEY❖KENNEDY
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148
(702) 562-8820 Telephone
(702) 562-8821 Facsimile
DKennedy@BaileyKennedy.com
KMcGhee@BaileyKennedy.com
CHenderson@BaileyKennedy.com

EDWARD GARTENBERG
(Cal. Bar No. 102693, *admitted pro hac vice*)
KRISTIN L. SCIARRA
(Cal. Bar No. 236247, *admitted pro hac vice*)
GARTENBERG GELFAND
WASSON & SELDEN LLP
801 South Figueroa, Suite 2170
Los Angeles, California 90025
(213) 542-2100 Telephone
(213) 542-2101 Facsimile
egartenberg@ggwslaw.com
ksciarra@ggwslaw.com

Attorneys for Defendant/Counterclaimant/
Third-Party Plaintiff WILLIAM T. WALTERS,
and Defendants GOLF CLUB OF NEVADA, INC.,
WALTERS GOLF, a division of THE WALTERS GROUP,
and LAS VEGAS PREFERRED TEE TIMES, LLC

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| FSP STALLION 1, LLC, et al., | ) |
| | ) Case No.: 2:08-cv-01155-PMP-PAL |
| Plaintiffs, | ) |
| | ) **OPPOSITION OF WILLIAM T.** |
| vs. | ) **WALTERS TO MOTION OF THIRD-** |
| | ) **PARTY DEFENDANT TO DISMISS OR** |
| MICHAEL F. LUCE, et al., | ) **STAY THE THIRD-PARTY** |
| | ) **COMPLAINT OF WILLIAM T.** |
| Defendants. | ) **WALTERS** |
| | ) |

1    WILLIAM T. WALTERS, an individual,            )
                                                   )
2                Counterclaimant,                  )
                                                   )
3        vs.                                       )
                                                   )
4    FSP STALLION 1, LLC, a Nevada limited         )
     liability company, et al.,                    )
5                                                  )
                                                   )
6                Counterdefendants.                )
     _____       )
7    WILLIAM T. WALTERS, an individual,            )
                                                   )
8                Third-Party Plaintiff,            )
                                                   )
9        vs.                                       )
                                                   )
10   TIC CAPITAL MARKETS, INC., a Delaware         )
     corporation; and DIRECT CAPITAL              )
11   SECURITIES, INC., a Delaware corporation,     )
                                                   )
12               Third-Party Defendants.           )
                                                   )
13

14   **OPPOSITION OF WILLIAM T. WALTERS TO MOTION OF THIRD-PARTY
     DEFENDANT TO DISMISS OR STAY THE THIRD-PARTY COMPLAINT OF**
15   **WILLIAM T. WALTERS**

16       William T. Walters ("Mr. Walters") opposes the Motion of Third-Party Defendants TIC

17   Capital Markets, Inc. ("TICCM") and Direct Capital Securities, Inc. ("DCS") (jointly the

18   "Moving Parties") to Dismiss or Stay the Third-Party Complaint of William T. Walters (the

19   "Motion") on the grounds that (1) abstention is precluded, as there is substantial doubt that a

20   final determination in the state court proceeding will resolve all the issues and claims in this

21   action, (2) a proper *Colorado River* analysis also dictates that this Court retain jurisdiction over

22   Mr. Walters' Third-Party claims against the Moving Parties; and (3) Mr. Walters' Third-Party

23   Complaint sufficiently alleges claims for indemnity and contribution.  For these reasons, Mr.

24   Walters respectfully requests that the Motion be denied.  This Opposition is based on the

25   following memorandum of points and authorities and the exhibits attached thereto.

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.     INTRODUCTION

3      The Motion submitted by the Moving Parties is both confusing and unavailing.  First, the

4   Moving Parties rely on an agreement that is outside the pleadings, but then caution this Court

5   that the Agreement "cannot be substantively considered in a Rule 12(b)(6) motion."  Second, the

6   Moving Parties go to great lengths to establish that Mr. Walters' claims in the Third-Party

7   Complaint are not compulsory, even though it is undisputed that Mr. Walters had the right to file

8   claims for indemnity and contribution against the Moving Parties in this action.[1]

9      The Moving Parties' additional arguments for dismissing Mr. Walters' Third-Party

10   Complaint, based upon *Colorado River* abstention, are likewise unhelpful and unavailing.  While

11   under certain limited circumstances, a district court may refrain, pursuant to *Colorado River*

12   abstention, from exercising jurisdiction over a case which is being litigated concurrently in state

13   court, abstention in this matter is inappropriate.  First, abstention is precluded in this case as

14   there is substantial doubt that a final determination in the state action will resolve all the issues

15   and claims among these parties.  Specifically, the FSP Stallion Entities[2] have not brought their

16   claims in the state court action – claims for which Mr. Walters' contribution and indemnity

17   claims arise.  Furthermore, an in-depth analysis of the *Colorado River* factors weighs heavily in

18

19   _____

[1]   The Moving Parties attempt to direct this Court's attention to the compulsory nature of Mr. Walters'
20   counterclaims.  *See* Mot. at 16.  Such an argument is a red-herring.  Whether the claims are compulsory is irrelevant,
     as they are clearly permissive and properly brought.

21

22   [2]   Plaintifffs FSP STALLION 1, LLC, FSP STALLION 2, LLC, FSP STALLION 3, LLC, FSP STALLION 4,
     LLC, FSP STALLION 5, LLC, FSP STALLION 6, LLC, FSP STALLION 7, LLC, FSP STALLION 8, LLC, FSP
     STALLION 9, LLC, FSP STALLION 10, LLC, FSP STALLION 11, LLC, FSP STALLION 12, LLC, FSP
23   STALLION 13, LLC, FSP STALLION 14, LLC, FSP STALLION 15, LLC, FSP STALLION 16, LLC, FSP
     STALLION 17, LLC, FSP STALLION 18, LLC, FSP STALLION 19, LLC, FSP STALLION 20, LLC, FSP
24   STALLION 21, LLC, FSP STALLION 22, LLC, FSP STALLION 23, LLC, FSP STALLION 24, LLC, FSP
     STALLION 25, LLC, and FSP STALLION 26, LLC, hereinafter will be referred to collectively as the "FSP Stallion
25   Entities."  The FSP Stallion Entities, their respective principals, hereinafter will be referred to collectively as the
     "TIC Defendants."

1    favor of this Court retaining jurisdiction over Mr. Walters' claims for contribution and

2    indemnity, as most of the *Colorado River* factors weigh against abstention.  In fact, the best the

3    Moving Parties can do is allege circumstances that are typical of most parallel litigation cases,

4    something which falls short of overcoming the "heavy presumption" favoring the exercise of

5    jurisdiction by the district courts.  Furthermore, there is no basis for this Court to decline to

6    exercise supplemental jurisdiction over Walters' counterclaims.

7         Additionally, the Moving Parties' Motion should be denied because it relies upon

8    unauthenticated and disputed evidence in an effort to obtain a dismissal based solely on facts

9    outside the pleadings.  While the Moving Parties themselves acknowledge that the Court may not

10   consider the agreement that they reference in the Motion, nearly all of the Moving Parties'

11   arguments either relate to, or rely on this agreement.  Not only is the document upon which the

12   Moving Parties rely unauthenticated and unexecuted, but other oral and/or written agreements

13   exist and are the true governing contracts in this case – contracts to which both TICCM and DCS

14   are parties – all of which were referenced in the Third-Party Complaint.  The document referred

15   to by the Moving Parties must be excluded from consideration.

16        Furthermore, each of Mr. Walters' claims against Moving Parties has been sufficiently

17   pled.  Mr. Walters respectfully requests that the Motion be denied in its entirety.

18                          **II.    STATEMENT OF FACTS**

19   **A.    Sale Of Stallion Mountain By Mr. Walters To The TIC Defendants.**

20        The Stallion Mountain Country Club ("Stallion Mountain") is located at 5500 E.

21   Flamingo Road, Las Vegas, Nevada, 89122.  (*See* William T. Walters, Golf Club of Nevada,

22   Inc., Walters Golf, a division of The Walters Group, and Las Vegas Preferred Tee Times, LLC's

23   ("Walters Defendants") Answer to Plaintiffs' Complaint and Counterclaims, Docket No. 72, at ¶

24   240.)  In or around 2005, an investment program, whereby up to 35 separate investors could

25   collectively participate in the purchase of Stallion Mountain (the "Offering"), was developed.

BAILEY❖KENNEDY
984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

1   (*Id.* at ¶ 241.)  The terms of the Offering were laid out in the November 30, 2005 Confidential

2   Private Placement Memorandum, including amendments and supplements ("PPM"), and in the

3   Tenants in Common Agreement.  (*Id.* at ¶ 242.)   Both the PPM and the Tenants in Common

4   Agreement explained in great detail the terms of the Offering and the responsibilities and

5   obligations of all of the involved parties. (*Id.* at ¶ 243.)

6          Mr. Walters and related parties retained TICCM and its subsidiary DCS to advise them

7   on structuring the Offering, preparing the Offering for sale to investors, recruiting potential

8   investors, and ensuring that all investors complied with the Investor Suitability Requirements as

9   set forth in the PPM.  (*Id.* at ¶ 245.) Mr. Walters and related parties entered into a contract with

10  DCS and TICCM (the "TICCM Contract") whereby DCS and TICCM promised to ensure that

11  investors in the Offering complied with the investor suitability requirements which were set forth

12  in the PPM.  (Walters' Third-Party Complaint, Docket No. 73, at ¶ 5.)  Specifically, the investor

13  suitability requirements were set forth in the PPM under the heading "WHO MAY INVEST" and

14  stated that "[e]ach prospective purchaser must represent in writing that he [or she] meets, among

15  others, all of the following requirements:"

16          (a)    He has received, read, and fully understands this Memorandum
                   and all exhibits hereto. He is basing his decision to invest only on
17                 this Memorandum and all exhibits thereto and hereto. He has relied
                   on the information contained in said materials and has not relied
18                 upon any representations made by any other person; and

19          (b)    He understands that an investment in the Interests involves
20                 substantial risks and he is fully cognizant of and understands all of
                   the risk factors relating to a purchase of the Interests, including,
21                 without limitation, those risks set forth below in the section
                   entitled "RISK FACTORS"; and
22

23          (c)    His overall commitment to investments that are not readily
                   marketable is not disproportionate to his individual net worth, and
24                 his investment in the Interests will not cause such overall
                   commitment to become excessive; and
25

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

(d)    He has adequate means of providing for his financial requirements, both current and anticipated, and has no need for liquidity in this investment; and

(e)    He can bear and is willing to accept the economic risk of losing his entire investment in the Interests; and

(f)    He is acquiring the Interests for his own account and for investment purposes only and has no present intention, agreement or arrangement for the distribution, transfer, assignment, resale or subdivision of the Interests; and

(g)    He is an "accredited investor" (as defined in Rule 501 of Regulation D under the Securities Act and as described below).

*Id.* at ¶ 6.  As the above PPM provisions provide, the interests being sold could only be sold to "accredited investors" as defined in Regulation D promulgated pursuant to the Securities Act of 1933.[3]  The TICCM Contract contained a contribution and indemnity provision whereby TICCM and DCS promised to indemnify and hold Mr. Walters harmless for any and all loss, liability, claims, damage, and expense whatsoever arising out of, *inter alia*, their gross negligence and based upon a violation of federal or state securities laws or a breach of the TICCM Contract.  *Id.* at ¶ 14.

Plaintiffs in this action are 26 separate special purpose Nevada limited liability companies organized under Delaware law.  (Plaintiffs' Complaint ("Compl."), Docket No. 1, at ¶ 1.)  Pursuant to the PPM, Plaintiffs purchased undivided tenants in common interests in an 18-hole, upscale semi-private golf course named Stallion Mountain.  (Compl., ¶¶ 18-24.)  The Defendants are the Sponsor, Fairway Signature Properties ("Fairway"), three individuals (Messrs. Luce, Munsch and Walters) and several other entities which Plaintiffs contend were controlled by these individuals.  Defendant Fairway was "formed to purchase Stallion Mountain

---

[3] Rule 501 of Regulation D defines an "accredited investor," as including certain specified entities and high income and/or high net worth individuals.

1  from Golf Club and then act as the sponsor for the private placement of the TIC [tenant in

2  common] Interests." (*Id.* at ¶ 32.)  Defendant Golf Club of Nevada, Inc. ("Golf Club") is a

3  corporation which owned and operated Stallion Mountain from 1997 to February 2006. (*Id.* at ¶

4  25.)  Defendant William Walters ("Walters"), was Golf Club's president and director. (*Id.* at ¶

5  25.)

6      On or around February 28, 2006, the TIC Defendants purchased Stallion Mountain for a

7  price of $24,480,000. (Counterclaims at ¶ 248.)   The TIC Defendants contributed $9,230,000 in

8  cash toward the purchase price. (*Id.* at ¶ 249.)   The balance of the purchase price, $15,250,000,

9  was financed through a loan funded by Community Bank and secured by the Stallion Mountain

10  property (the "Stallion Mountain Purchase Loan"). (*Id.* at ¶ 250.)  Mr. Walters personally

11  guaranteed the Stallion Mountain Purchase Loan (the "Guaranty"). (*Id.* at ¶ 251.)

**B.     The TIC Defendants Mismanaged Stallion Mountain and Breached the Master
         Lease.**

14      Under the terms of the PPM, the TIC Defendants were prohibited from taking possession

15  of Stallion Mountain, but instead were required to lease Stallion Mountain to Stallion Mountain

16  LeaseCo, LLC (the "Master Lessee") on a triple net basis in accordance with a Master Lease.

17  (*Id.* at ¶ 252.)  The Master Lessee then entered into a Property Management Agreement with

18  Evergreen Alliance Golf Limited, LP ("EAGL"), the entity responsible for managing and

19  operating Stallion Mountain. (*Id.* at ¶ 253.)   The Master Lessee's obligations under the Master

20  Lease included paying Base and Additional Rent to the TIC Defendants while bearing all costs

21  (with the exception of Capital Expenses) of operating, maintaining, repairing, and leasing

22  Stallion Mountain. (*Id.* at ¶ 254.)   The Master Lessee was also obligated to purchase the

23  furniture, fixtures, and equipment (the "FF&E") used by Stallion Mountain and to retain

24  ownership of those items. (*Id.* at ¶ 255.)

25

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

1    The TIC Defendants were not permitted to terminate the Master Lease absent a default by

2  the Master Lessee. (*Id.* at ¶ 256.) In the event of an unauthorized termination of the Master

3  Lease, the principals of the FSP Stallion Entities became personally liable – jointly and severally

4  – for the entirety of the Stallion Mountain Purchase Loan. (*Id.* at ¶ 257.) TIC Defendants

5  terminated the Property Management Agreement with EAGL and executed a new property

6  management agreement with SCI Capital Group, LLC ("SCI") and Pacific Golf Enterprises, LP

7  ("PGE"). (*Id.* at ¶ 259.) The TIC Defendants eventually defaulted on the Stallion Mountain

8  Purchase Loan. (*Id.* at ¶ 260.) In addition, SCI and PGE's poor management of Stallion

9  Mountain caused Stallion Mountain to operate at a loss. (*Id.* at ¶ 261.) In order to raise capital

10  for Stallion Mountain operations, the TIC Defendants, SCI, PGE, George Pappas, and Phillip

11  Vigil began to implement a so-called "turf reduction plan" by which portions of the grass and

12  turf at Stallion Mountain were removed and replaced with dirt and gravel in exchange for cash

13  rebates from the Southern Nevada Water Authority ("SNWA"). (*Id.* at ¶ 262.) The TIC

14  Defendants, SCI, PGE, George Pappas, and Phillip Vigil removed a large amount of the Stallion

15  Mountain golf course and driving range turf and grass and misappropriated the cash rebates to

16  their own use, in violation of their obligations under the aforesaid agreements. (*Id.* at ¶ 263.)

17  The acts of the TIC Defendants, SCI, PGE, George Pappas, and Phillip Vigil, as described

18  above, caused a substantial decrease in the value of Stallion Mountain and negatively affected

19  Stallion Mountain's status as a high quality golf destination in Las Vegas. (*Id.* at ¶ 264.)

20    In July 2008, the TIC Defendants notified Community Bank that they were no longer

21  going to operate Stallion Mountain and turned over control of the property to Community Bank.

22  (*Id.* at ¶ 265.) As a result of the TIC Defendants' conduct, the Eighth Judicial District Court, on

23  July 16, 2008, appointed Keith Flatt as receiver for Stallion Mountain. (*Id.* at ¶ 266.) Around

24  that same time, Stallion Mountain went out of business and ceased providing golf services to its

25  members and to the public. (*Id.* at ¶ 267.) On August 11, 2008, Mr. Walters was notified by

1  Nevada Title Company that Community Bank had initiated foreclosure proceedings on the

2  Stallion Mountain Purchase Loan. (*Id.* at ¶ 268.) On December 9, 2008, a foreclosure sale was

3  held at which Community Bank purchased Stallion Mountain for a credit bid of $5,000,000.00.

4  (*Id.* at ¶ 269.)

5  **C.    TIC Defendants' Lawsuit.**

6        In response to the alleged loss suffered by the TIC Defendants, the TIC Defendants filed

7  this action alleging that the FSP Stallion Entities and their principals were "unsophisticated

8  investors" and "ordinary people, including school teachers, construction workers, nurses, and

9  retirees," (Compl. at ¶¶ 17, 20.) The FSP Stallion Entities further allege that the Offering

10  violated federal and state securities laws because Mr. Walters and related entities formed

11  Fairway, the sponsor, "in an effort to insulate Walters, Walter Golf, and Golf Club from liability

12  associated with the fraudulent sale of the TIC Interests, and to create the misleading appearance

13  that the controversial Mr. Walters was not directly involved in the offering." (*Id.* at ¶ 33.)

14  Additionally, the FSP Stallion Entities allege that Mr. Walters made a representation or omitted

15  and failed to disclose necessary information and that the TIC Defendants relied on this

16  representation and/or omission. (*Id.* at ¶¶ 28, 36-47, 63-72, 74-76, 78-86, 88-93, 95-102, 104-

17  112, and 114-117.)

18        Plaintiffs filed this action on August 29, 2008. Thereafter, Mr. Walters answered

19  Plaintiffs' Complaint and asserted the following counterclaims: 1) Waste against the TIC

20  Defendants, George Pappas, Phillip Vigil, SCI, and PGE; 2) Conversion against the TIC

21  Defendants, George Pappas, Phillip Vigil, SCI, and PGE; and 3) Indemnity and Contribution

22  against the TIC Defendants, George Pappas, Phillip Vigil, SCI, and PGE. (Countercl. at ¶¶ 270-

23  283.) On or about May 18, 2009, Mr. Walters filed a Third-Party Complaint against DCS and

24  TICCM asserting that: 1) DCS and TICCM breached the TICCM Contract by failing to comply

25  with all applicable federal and state securities laws and regulations; 2) DCS and TICCM

1  breached the TICCM Contract by failing to ensure that all investors met the Investor Suitability

2  Requirements; and 3) that Mr. Walters was entitled—based on the indemnity and contribution

3  provisions contained in the TICCM Contract—to recover from DCS and/or TICCM all sums that

4  may be awarded against him in Plaintiffs' favor based on the indemnity and contribution

5  provisions contained in the TICCM Contract.

<div align="center">

**III.    ARGUMENT**

</div>

6

7  **A.    The *Colorado River* Doctrine**

8       Moving Parties argue that the *Colorado River* doctrine counsels in favor of this Court's

9  dismissal or stay of Mr. Walters' Third-Party Complaint based upon a duplicative and parallel

10  state action.  However, it is well established that "the pendency of an action in the state court is

11  no bar to proceedings concerning the same matter in the Federal court having jurisdiction ..."

12  *McClellan v. Carland*, 217 U.S. 268, 282 (1910); *see also Clark v. Lacy,* 376 F.3d 682, 685 (7th

13  Cir. 2004) (An action pending in state court "is ordinarily no bar to parallel federal

14  proceedings.")  While the Supreme Court in *Colorado River* carved out a narrow exception to the

15  general rule that favors concurrent jurisdiction, a careful analysis of the exception leads to the

16  conclusion that it should not be applied here.

17       In *Colorado River*, the Court held that under certain limited circumstances, a district

18  court may refrain from exercising jurisdiction over a case which is being litigated concurrently in

19  state court.  *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976).  The

20  Supreme Court has repeatedly emphasized that this exception to the general rule only applies in

21  special circumstances in light of the "virtually unflagging obligation" of federal courts to hear

22  cases over which they have jurisdiction.  *Id.* at 817-18; *see also Moses H. Cone Mem'l Hosp. v.*

23  *Mercury Constr. Corp.*, 460 U.S. 1, 15-16 (1983).  Moreover, under the *Colorado River* doctrine

24  "[o]nly the clearest justification will warrant dismissal." *Colorado River*, 424 U.S. at 819.

25

1    As a threshold matter, *Colorado River* is inapplicable unless the two matters at issue are

2    truly "parallel." *See Lumen Const., Inc. v. Brant Const. Co., Inc.,* 780 F.2d 691, 695 (7th Cir.

3    1985). Suits in federal and state court are not parallel where an adjudication of the state action is

4    inadequate to resolve all the claims and issues in the federal action. *Id.*

5    Once it has been determined that the two actions are parallel, the Supreme Court's

6    decision in *Colorado River* sets out four factors to be weighed in determining the applicability of

7    this exception: 1) whether property was the object of the litigation; 2) the inconvenience of the

8    federal forum; 3) the desirability of avoiding piecemeal litigation; and 4) the order in which

9    jurisdiction was obtained by the concurrent forums. *Colorado River*, 424 U.S. at 818; *Nakash v.*

10   *Marciano*, 882 F.2d 1411, 1415 (9th Cir.1989). In *Moses H. Cone*, the Supreme Court added

11   two additional elements to be considered: 5) whether federal or state law controls, and 6)

12   whether the state forum will adequately protect the interests of the parties. *Moses H. Cone*, 460

13   U.S. at 25-26; *Nakash*, 882 F.2d at 1415.

14   In balancing the different elements, "[n]o one factor is necessarily determinative; a

15   carefully considered judgment taking into account both the obligation to exercise jurisdiction and

16   the combination of factors counseling against that exercise is required." *Colorado River*, 424

17   U.S. at 818-819. In performing a *Colorado River* analysis, district courts must balance each

18   factor "heavily weighted in favor of the exercise of jurisdiction." *Travelers Indem. Co. v.*

19   *Madonna,* 914 F.2d 1364, 1368 (9th Cir. 1990); *see also Moses H. Cone,* 460 U.S. at 16; *Am.*

20   *Bankers Ins. Co. v. First State Ins. Co.*, 891 F.2d 882, 885 (11th Cir.1990) (reversing a stay

21   because district court failed to give sufficient regard to the presumption); *Evanston Ins. Co. v.*

22   *Jimco, Inc.*, 844 F.2d 1185, 1191 (5th Cir.1988) (reversing dismissal because the district court,

23   among other reasons, failed to "heavily weight" the presumption); *Bethlehem Contracting Co. v.*

24   *Lehrer/McGovern, Inc.*, 800 F.2d 325, 327 (2d Cir.1986) (reversing dismissal because the district

25   court gave "no weight" to the presumption). Further, "[a]ny doubt as to whether a factor exists

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

1  should be resolved against a stay, not in favor of one." *Travelers,* 914 F.2d at 1369.  Here, the

2  balance of the factors does not weigh in favor of a stay or dismissal of Mr. Walters' claims for

3  contribution and indemnity.

4  **B.     Abstention Under *Colorado River* Is Inappropriate Where The State Court Is An
          Inadequate Vehicle For The Complete Resolution Of The Parties' Claims In**

5  **Federal Court**

6         Before a court concerns itself with whether or not to abstain under *Colorado River,* it

7  must be satisfied that the proceedings pending in federal and state court are parallel.  *Diamond*

8  *Offshore Co. v. A & B Builders, Inc.,* 302 F.3d 531, 540 (5th Cir. 2002).  Actions are not parallel

9  for purposes of a *Colorado River* analysis where the federal and state actions are predicated on

10  common underlying facts but involve separate legal issues.  *See Al-Abood v. El-Shamari,* 217

11  F.3d 225, 232-33 (4th Cir. 2000); *see also McLaughlin v. United Va. Bank,* 955 F.2d 930, 935

12  (4th Cir. 1992).  To meet the "parallel" requirement, the actions must be substantially similar,

13  though precise parallelism between the federal and state court actions is not required.  *Travelers,*

14  914 F.2d at 1372.

15         The Ninth Circuit has clearly established that "the requirement of 'parallel' state court

16  proceedings implies that those proceedings are sufficiently similar to the federal proceedings to

17  provide relief for *all* the parties' claims."  *Intel Corp. v. Advanced Micro Devices, Inc.,* 12 F.3d

18  908, 913 n.4 (9th Cir. 1993) (emphasis added); *see also Holder v. Holder,* 305 F.3d 854, 868 (9th

19  Cir. 2002) (holding that actions were not parallel as required for stay under *Colorado River*

20  because an adjudication of state action will not resolve *all* the claims and issues in the federal

21  action).  Further, "the existence of a substantial doubt as to whether the state proceedings will

22  resolve the federal action precludes the granting of a stay." *Intel Corp.,* 12 F.3d at 913; *see also*

23  *Moses H. Cone,* 460 U.S. at 28 ("When a district court decides to dismiss or stay under *Colorado*

24  *River,* it presumably concludes that the parallel state-court litigation will be an adequate vehicle

25  for complete resolution of the issues between the parties."); *Holder,* 305 F.3d at 868 (holding

1  that it was inappropriate to stay proceedings under the *Colorado River* abstention doctrine where

2  a judgment in state court was unable to resolve all the issues before the federal court).

3     The Moving Parties ask that this Court stay or dismiss Mr. Walters' Third-Party

4  Complaint. However, Mr. Walters' claims of indemnity and contribution against the Moving

5  Parties in the Third-Party Complaint are directly tied to Plaintiffs' claims for violations of the

6  Securities Exchange Act of 1934, which are subject to exclusive jurisdiction in federal courts.

7  *See* 15 U.S.C. § 78aa; *see also Clark v. Watchie,* 513 F.2d 994, 997 (9th Cir. 1975) (stating that

8  the "Securities Exchange Act of 1934…gives exclusive jurisdiction to the federal courts to

9  consider Rule 10b-5 claims.") Plaintiffs' federal securities fraud claims cannot be resolved by a

10  judgment in the state court proceeding. *See Clark,* 513 F.2d at 997 (holding that *res judicata*

11  cannot be applied to a Rule 10b-5 claim under the Securities Exchange Act of 1934.). *See Clark,*

12  513 F.2d at 997 (holding that *res judicata* cannot be applied to a Rule 10b-5 claim under the

13  Securities Exchange Act of 1934.) Further, the Moving Parties' liability for indemnity and

14  contribution cannot be determined until Plaintiffs' federal securities fraud claims are resolved in

15  this action. Therefore, abstention on Mr. Walters' claims for indemnity and contribution is

16  precluded because the state action cannot dispose of all claims presented in this action.

17  **C.     The *Colorado River* Factors Weigh Against Abstention**

18     A proper *Colorado River* analysis also dictates that this Court retain jurisdiction over Mr.

19  Walters' Third-Party Complaint. In balancing the different factors set forth in *Colorado River*

20  and *Moses H. Cone*, the Supreme Court emphasized that a district court's task in determining

21  whether to apply the *Colorado River* abstention doctrine "is not to find some substantial reason

22  for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether

23  there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under

24  Colorado River to justify the surrender of that jurisdiction." *Moses H. Cone*, 460 U.S. at 25-26.

25

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

1  The "heavy presumption" favoring this Court's jurisdiction over Mr. Walters' Third-Party

2  Complaint has not been overcome in this case.

### 1.    The First *Colorado River* Factor Weighs Against Abstention

4  The First *Colorado River* factor—whether property is the object of the litigation—weighs

5  against abstention, since this action does not involve the disposition of property.  However, this

6  does not render this factor meaningless.  Since the purpose of a *Colorado River* analysis is to

7  ascertain whether "exceptional circumstances" exist to warrant surrendering federal jurisdiction,

8  the facial neutrality of a factor is a basis for retaining jurisdiction.  *Woodford v. Cmty. Action*

9  *Agency of Greene County, Inc.,* 239 F.3d 517, 522-23 (2d Cir. 2001) (recognizing that the

10  absence of a factor balances in favor of retaining jurisdiction); *see also Evanston,* 844 F.2d at

11  1191 (same).  As such, the absence of *res* in this action weighs in favor of this Court retaining

12  jurisdiction over Mr. Walters' Third-Party Complaint.  *See Village of Westfield v. Welch's,* 170

13  F.3d 116, 121 (2d Cir. 1999).

### 2.    The Second *Colorado River* Factor Also Weighs Against Abstention

15  The second factor, the inconvenience of the federal forum, also weighs in favor of this

16  Court retaining jurisdiction.  Here, the federal forum is no less convenient than the state forum

17  since both courts are located in the same district.  *Village of Westfield,* 170 F.3d at 122 (stating

18  that where the federal court is "just as convenient as the state court, that factor favors retention of

19  the case in federal court."); *see also Rojas-Hernandez,* 925 F.2d at 494 (same).  Therefore, the

20  second *Colorado River* factor weighs against abstention.

### 3.    The Third *Colorado River* Factor Does not Weigh in Favor of Abstention

22  The Moving Parties argue that the third factor, avoiding piecemeal litigation, weighs

23  against jurisdiction over Walters' claims in the Third-Party Complaint, but a closer look at this

24  factor indicates that it does not.  "In analyzing whether dismissal or stay will further the interest

25  in avoiding piecemeal litigation, [courts] look…for a substantial likelihood that the state

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

1  litigation will dispose of all claims presented in the federal case." *Lumen,* 780 F.2d at 695; *see*

2  *also Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.,* 743 F.2d 1519 (11th Cir. 1984)

3  (stating that litigation was "inevitably piecemeal" where the federal action involves claims that

4  were not asserted as cross claims in the state action); *Babbitt v. State of Mich. through Dep't of*

5  *Soc. Servs.,* 778 F. Supp. 941, 945-46 (W.D. Mich. 1991); *Hastings v. Alexis,* 1990 WL 91587

6  (D.D.C. 2000) (refusing to abstain where stay would not avoid piecemeal litigation between

7  parties because plaintiff's federal claims were not asserted in the state action).  As explained

8  above, Mr. Walters' claims in the Third-Party Complaint will not be resolved by a judgment in

9  the state court proceeding.  Thus, the third *Colorado River* factor does not weigh in favor of

10  abstention because piecemeal litigation between the parties (*i.e.* Mr. Walters and the Moving

11  Parties) will not be avoided by abstention from Mr. Walters' claims for indemnity and

12  contribution against the Moving Parties.  *See Francorp, Inc. v. Siebert,* 210 F. Supp. 2d 961, 970

13  (N.D. Ill. 2001) (recognizing that abstaining on one of the counterclaims would not avoid

14  piecemeal litigation).

15       It should also be noted that under the *Colorado River* doctrine, inefficiency that results

16  "merely from a duplication of effort will not, by itself, justify the surrender of federal

17  jurisdiction." *Rojas-Hernandez,* 925 F.2d at 496; *see also Spring City Corp. v. Am. Bldgs. Co.,*

18  193 F.3d 165, 171-72 (3d Cir. 1999) (stating that abstention must be based upon something more

19  than just an interest in avoiding duplicative litigations.); *Am. Bankers Ins. Co. of Fla. v. First*

20  *State Ins. Co.,* 891 F.2d 882, 886 (11th Cir. 1990) ("A federal court cannot properly decline to

21  exercise [jurisdiction] simply because judicial economy might be served by deferring to a state

22  court"); *Bd. Of Cty. Comm'rs of Douglas County, Kan. v. Hayden,* 715 F. Supp. 313, 315 (D.

23  Kan. 1989) (stating that the possibility of piecemeal litigation was not an "exceptional

24  circumstance" warranting abstention.)

25

1    Even where duplicative proceedings result in piecemeal litigation, a correct evaluation of

2    the third *Colorado River* factor "involves considering whether exceptional circumstances exist

3    which justify special concern about piecemeal litigation." *Travelers,* 914 F.2d at 1369; *see also*

4    *Rojas-Hernandez*, 925 F.2d at 496 (abstention may be justified where parallel or piecemeal

5    adjudication gives rise to special complications); *Gannett Co., Inc. v. Clark Const. Group, Inc.,*

6    286 F.3d 737, 744 (4th Cir. 2002) (holding parallel litigation would warrant abstention under

7    *Colorado River* where duplicative proceedings would be exceptionally problematic).

8    Exceptional circumstances exist where "there is evidence of a strong federal policy that all

9    claims should be tried in the state courts." *Ryan v. Johnson,* 115 F.3d 193, 197-98 (3d Cir.

10   1997); *see also Colorado River*, 424 U.S. at 819 (recognizing that the federal legislation at issue

11   contained a strong federal policy favoring the avoidance of piecemeal adjudication, such as the

12   disposition of water rights on a stream system involving "the relationship among which are

13   highly interdependent.")

14       Here, there is no potential for "harsh results" or "special complications" if abstention is

15   denied. *See Burns v. Walters,* 931 F.2d 140, 146 (holding that a case presenting "a

16   straightforward application of state negligence laws and thus, the possibility of harsh,

17   contradictory or unfair consequences" was unlikely to result from piecemeal litigation.)  Indeed,

18   the Moving Parties have failed to assert circumstances that are not generally present in most

19   parallel litigations. *See Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 915 F.2d 7, 16 (1st

20   Cir. 1990) (stating that a court must look beyond the routine inefficiency that inevitably results

21   from parallel proceedings in determining whether there is some "exceptional basis" for

22   abstention based upon the concern for avoiding piecemeal litigation); *see also Freund v.*

23   *Republic of France,* 592 F. Supp. 2d 540, 578 (S.D.N.Y. 2008) (stating that in assessing whether

24   exceptional circumstances are present which might justify abstention, a court must identify

25   considerations which are not generally present as a result of parallel litigation).  Furthermore, the

1    Moving Parties have failed to point to "federal legislation evincing a federal policy to avoid

2    piecemeal litigation" which would justify special concern about piecemeal adjudication here.

3    *See Travelers,* 914 F.2d at 1369.  As such, the third *Colorado River* factor weighs against

4    abstention because adjudication in the state action will not dispose of all claims presented in this

5    action, and there are no special complications that would result from piecemeal litigation.

6              **4.    The Fourth *Colorado River* Factor Does Not Weigh in Favor of Abstention**

7              The fourth *Colorado River* factor, the order in which jurisdiction was obtained by the

8    courts, also fails to weigh in favor of this Court relinquishing its jurisdiction.  Mr. Walters filed

9    claims for indemnity and contribution against the Moving Parties in the state action on March 31,

10   2009 and filed these same claims in this action on May 18, 2009.  The mere fact that the state

11   action was filed first does not, by itself, preclude the exercise of jurisdiction by this Court, even

12   though both actions deal with similar claims and issues.  *See McClellan,* 217 U.S. at 282 ("both

13   the state and Federal courts have certain concurrent jurisdiction over [proceedings concerning the

14   same matter] ... and the cause [may be] carried to judgment, notwithstanding a state court may

15   also have taken jurisdiction of the same case."); *see also Bd. Of Cty. Comms. Of Douglas Cty.,*

16   715 F. Supp. at 315 (abstention denied where state court action filed shortly before federal action

17   and possibility of piecemeal litigation was not an "exceptional circumstance" warranting

18   abstention.")  The Moving Parties argue that abstention is justified because the state action has

19   progressed further than this action.  (Mot. at 13:23-14:16.)  However, even though the state

20   action may have progressed further than the federal action, this alone is not an "exceptional

21   circumstance" under the *Colorado River* doctrine.  *See Villa Marina,* 915 F.2d at 15 (holding that

22   abstention was not justified merely based upon fact that state action had progressed further than

23   federal action).

24             Courts have recognized that the fourth *Colorado River* factor may balance in favor of

25   abstention where the state case has progressed *far* beyond the federal case, and "it would be

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

1    highly inefficient to allow the federal litigation to proceed." *Nakash,* 882 F.2d 1411 (finding this

2    factor relevant where the parties in the state action had already participated in 70 hearings and

3    conducted 100 depositions and there had been no progress in the federal action, which was filed

4    three and one-half years after the state action); *cf. Villa Marina,* 915 F.2d at 15 (holding that the

5    state action had not progressed significantly further than the federal action where hearings and

6    numerous depositions had been taken in the state action).

7            The state action in this matter has not progressed far beyond this action, in fact, discovery

8    in the state action has only progressed slightly further than discovery in this action.  Further, no

9    discovery in either this action or the state action has occurred that is specifically directed at the

10   claims relating to Mr. Walters and the Moving Parties.  (Declaration of Kimberly McGhee,

11   attached hereto as Exhibit 1, ("McGhee Decl."), at ¶ 2.)  Instead, discovery that has occurred in

12   the state action has related to defending and prosecuting claims with Community Bank of

13   Nevada.  *Id.*  With regard to discovery conducted relating to Mr. Walters' claims for indemnity

14   and contribution against the Moving Parties, neither action has progressed further than the other.

15   (*Id.* at ¶ 3.)  As such, the fourth *Colorado River* factor fails to tip the scales against the exercise

16   of jurisdiction.

17           **5.    The Fifth *Colorado River* Factor Weighs Against Abstention**

18           The fifth factor recognized by the Court in *Moses H. Cone* also weighs against

19   abstention.  First, while Mr. Walters' Third-Party Complaint involves issues of state law, the

20   same is true of many actions in federal court.  The Supreme Court in *Moses H. Cone* stated that

21   only in "rare circumstances will the presence of state-law issues weigh in favor" of surrendering

22   jurisdiction.  *Moses H. Cone*, 460 U.S. at 26.  "Courts generally have agreed that rare

23   circumstances exist only when a case presents 'complex questions of state law that would best be

24   resolved by a state court.'" *Villa Marina*, 915 F.2d at 15 (quoting *American Bankers Ins. Co. of

25   Fla.*, 891 F.2d at 886); *see also Travelers,* 914 F.3d at 1370 (stating that the presence of state law

1    issues did not balance in favor of abstention since the case involved "routine issues of state

2    law"); *Village of Westfield,* 170 F.3d at 124 (stating that the absence of federal law issues does

3    not weigh in favor of dismissal "unless the state law issues are novel or particularly complex.");

4    *cf. Colorado River,* 460 U.S. at 25-26 (granting abstention where cases involved complex issues

5    of state law requiring the determination of state water rights in a river system).  No such rare

6    circumstances are involved here, since Mr. Walters' claims for indemnity and contribution

7    involve the straightforward application of Nevada law.  *See Noonan South, Inc., v. County of*

8    *Volusia,* 841 F.2d 380, 382 (11th Cir. 1988).  As such, this factor does not counsel against the

9    exercise of jurisdiction.

10        **6.        The Sixth *Colorado River* Factor Does not Weigh in Favor of Abstention**

11            The Moving Parties argue that the sixth factor, the adequacy of the state forum, also

12    weighs in favor of dismissal because "there is no reason to believe that either of the state

13    proceedings are inadequate to protect the parties' rights." (*See* Mot. at 14:24-25.)  However, the

14    sixth *Colorado River* factor balances in favor of abstention only where the state forum is

15    inadequate to adjudicate the claims. *Rojas-Hernandez*, 925 F.2d at 496.  Here, this factor is

16    rendered neutral where both forums are adequate to protect the rights of each party.  *Noonan*

17    *South,* 841 F.2d at 383. As such, abstention over Mr. Walters' Third-Party Complaint is

18    improper.

19        **7.        There is no Indication that Mr. Walters is Forum Shopping**

20            Under a *Colorado River* analysis, the Ninth Circuit has held that courts may also consider

21    whether a party opposing abstention is forum shopping "to avoid adverse rulings made by the

22    state court or to gain a tactical advantage from the application of federal court rules." *Travelers,*

23    914 F.2d at 1371.  Contrary to the Moving Parties' vague and undifferentiated assertion, there is

24    no evidence that Mr. Walters is forum shopping.  Mr. Walters' filing a Third-Party Complaint in

25    this action did not stem or result from an adverse ruling in state court since there have been none

1  respecting these claims. *See Nakash,* 882 F.2d at 1417 (implying that defendants in state action

2  were forum shopping by avoiding adverse rulings in state court when they filed claims in federal

3  court three and one-half years after the state action was filed); *see also Fuller Co. v. Ramon I.*

4  *Gil, Inc.,* 782 F.2d 306, 309-10 (1st Cir. 1986) (recognizing that forum shopping to avoid

5  adverse rulings occurred where, following an adverse ruling in state court, defendant "rush[ed]

6  over to the federal courthouse in the hope of obtaining a more favorable determination.").

7  Further, there is no evidence that Mr. Walters filed his Third-Party Complaint in this action to

8  gain a tactical advantage from the application of federal court rules, such as the Federal Rules of

9  Evidence or Federal Rules of Civil Procedure. *See American Int'l Underwriters, Inc. v.*

10 *Continental Ins. Co.,* 843 F.2d 1253, 1259 (9th Cir. 1988) (recognizing that district court was

11 justified in holding that party was forum shopping where party abandoned its state court case

12 "solely because it believes that the Federal Rules of Evidence are more favorable to it than the

13 state evidentiary rules.")  Therefore, this factor weigh against abstention.

14 **D.    This Court Should Not Decline to Exercise Supplemental Jurisdiction Under 28**
       **U.S.C. § 1367.**

15
       The Moving Parties, without much support or analysis, request that this Court decline to

16
   exercise supplemental jurisdiction over Mr. Walters' counterclaims.  The basis for the Moving
17
   Parties' requested relief is 28 U.S.C. § 1367(c)(4), which provides that the Court may decline to
18
   exercise supplemental jurisdiction if "in exceptional circumstances, there are other compelling
19
   reasons for declining jurisdiction." (Mot. at 17:2-10.)  As demonstrated above, the facts relied
20
   upon by the Moving Parties to dismiss Mr. Walters' Third-Party Complaint are far from
21
   exceptional.  Indeed, a district court's exercise of concurrent jurisdiction under the circumstances
22
   is well settled. *See McClellean,* 217 U.S. at 282 ("both the state and Federal courts have certain
23
   concurrent jurisdiction over [proceedings concerning the same matter]…and the cause [may be]
24
   carried to judgment, notwithstanding a state court may also have taken jurisdiction of the same
25
   case.")  Mr. Walters' claims for indemnity and contribution in the Third-Party Complaint are

1    directly related to Plaintiffs' federal claims for securities fraud, and a determination on these

2    claims may not be made until Mr. Walters' liability with regard to the federal securities fraud

3    claims is first determined.  Thus, this Court should retain jurisdiction over Mr. Walters' Third-

4    Party Complaint because fairness considerations weigh against this Court declining to exercise

5    jurisdiction.  Accordingly, this Court should reject the Moving Parties' request that it decline to

6    exercise supplemental jurisdiction.

7    **E.      The Third-Party Complaint Sufficiently Alleges Claims for Indemnity and
             Contribution.**

8

9             **1.      This Court Should Strike the MBD Agreement Because It Exists Outside the
                      Pleadings and Is Unauthenticated.**

10

11            "As a general rule 'a district court may not consider any material beyond the pleadings in

12   ruling on a 12(b)(6) motion'" *Lee v. City of Los Angeles,* 250 F. 3d 668, 688 (quoting *Branch v.*

13   *Tunnell*, 14 F.3d 449, 453 (9th Cir.1994))  "[W]hen matters outside the pleadings are presented

14   on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the district court must

15   either exclude the additional material and decide the motion on the complaint alone or convert

16   the motion to one for summary judgment..." *Shah v. Wilco Systems, Inc.,* 126 F. Supp.2d 641,

17   646, (S.D.N.Y. 2000); *see also Branch,* 14 F.3d at 453.  A district court commits reversible error

18   when it considers matters extraneous to the pleading when deciding a motion to dismiss. *Bonilla*

19   *v. Oakland Scavenger Co.,* 697 F.2d 1297, 1301 (9th Cir. 1982).

20            In *Branch*, the Ninth Circuit held that "documents whose ***contents are alleged in a***

21   ***complaint*** and whose ***authenticity no party questions***, but which are not physically attached to

22   the pleading, may be considered on a Rule 12(b)(6) motion to dismiss." *Branch*, 14 F.3d at 454

23   (emphasis added) (holding it was proper to consider documents where ***neither side questioned***

24   ***the documents' authenticity*** and where the documents were ***expressly*** mentioned in the

25   complaint).  Here, the Moving Parties make multiple references to a Managing Broker-Dealer

     Agreement ("MBD Agreement"), but no such agreement was authenticated.  This is not

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

1  surprising, since the alleged MBD Agreement referred to by the Moving Parties is not executed

2  by anyone. Furthermore, Mr. Walters' Third-Party Complaint never mentions the content of this

3  Agreement. The alleged MBD Agreement should be stricken and any reference to it in the

4  Motion should be disregarded.

5  If a district court on a motion to dismiss intends to consider matters outside pleadings, the

6  opposing party should be given some notice to afford it the opportunity to furnish the court with

7  relevant material in support of its own position. *Costen v. Pauline's Sportswear, Inc.,* 391 F.2d

8  81, 85 at n.5 (9th Cir. 1968); *see also Mack v. South Bay Beer Distributors,* 798 F.2d 1279, 1282

9  (9th Cir. 1986) ("It is reversible error for a court to grant a motion to dismiss that has been

10  converted to one for summary judgment, without providing all parties a reasonable opportunity

11  to present material relevant to a Rule 56 motion."). Mr. Walters makes that request here should

12  it become necessary.

       **2.**       **The Third-Party Complaint Sufficiently Alleges Claims for Indemnity and Contribution.**

13

14

15  The Moving Parties allege that the allegations in the Third-Party Complaint are not pled

16  with sufficient specificity. However, the Moving Parties support their position by feigning

17  ignorance as to the contractual relationship which governed their performance throughout the

18  TIC Transaction and referencing another contract which may not be considered for purposes of

this Motion to Dismiss.

19  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

20  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S.

21  Ct. 1937, 1949 (2009). A complaint must set forth "a short and plain statement of the claim

22  showing that the pleader is entitled to relief." Fed. R. Civ. P. 8; *see also Ashcroft,* at 129 S. Ct.

23  at 1949. In ruling on a motion to dismiss, the allegations in the complaint must be construed in

24  the light most favorable to the nonmoving party. *See Parks Sch. of Bus., Inc. v. Symington,* 51

25  F.3d 1480, 1484 (9th Cir.1995). Mr. Walters' Third-Party Complaint sufficiently alleges claims

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

1   for indemnity and contribution, especially given the fact that all allegations of material fact are to

2   be taken as true and viewed in the light most favorable to the non-moving party on a motion to

3   dismiss. *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996).

4     A right to indemnity may arise from an express or implied contract or from the equities

5   of a given situation. *Medallion Dev., Inc. v. Converse Consultants,* 930 P.2d 115, 119 (Nev.

6   1997); *Maryland Cas. Co. v. Bailey & Sons, Inc.*, 41 Cal. Rptr. 2d 519, 523-24 (Cal. Ct. App.

7   1995). A claim for express contractual indemnity must contain a short statement "sufficient to

8   give fair notice of the claim involved, including an allegation of a contractual relationship

9   between the parties, and the substance of the contract which supports the pleader's right to

10  recover." *Air & Pump Co. v. Almaquer,* 609 S.W.2d 309, 313 (Tex. Ct. App. 1980).

11  Contribution is a form of indemnity, as contribution simply means a sharing of loss while

12  indemnity means a shifting of the entire loss. *Chenery v. Agri-Lines, Corp.*, 766 P.2d 751, 755

13  (Id. 1988); *see also Medallion Dev.,* 930 P.2d at 119. To plead claims for indemnity and

14  contribution, a pleading "must state both factual and legal basis for claimant's entitlement to

15  relief requested." *Askanase v. Fatjo*, 148 F.R.D. 570, 573 (S.D. Tex. 1993); *see Lone Star Ind.,*

16  *Inc. v. Howell Trucking, Inc.*, 199 S.W. 3d 900, 905 (Mo. Ct. App. 2006) (holding that indemnity

17  was pled with sufficient specificity where the petition specifically recited the factual basis for

18  indemnity and explicitly pleaded entitlement to indemnity based upon the indemnity provisions

19  of an agreement); *Dunham Bush, Inc. v. Thermo Air Serv., Inc.,* 351 So. 2d 351, 352 (Fl. Ct.

20  App. 1997) (stating that a complaint seeking to assert a cause of action for indemnity should set

21  forth factual allegations designating the basis for right to indemnity such as express or implied

22  contract.)

23    Mr. Walters' Third-Party Complaint sufficiently pleads claims for indemnity and

24  contribution. It alleges that Mr. Walters and related parties entered into the TICCM Contract,

25  which obligated DCS and TICCM to ensure that investors in the Offering complied with the

investor suitability requirements which were set forth in the PPM. (Walters' Third-Party

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

1     Complaint at ¶ 5.)  Further, the Third-Party Complaint alleges that the Moving Parties breached

2     the TICCM Contract, which contained a contribution and indemnity provision whereby TICCM

3     and DCS promised to indemnify and hold Mr. Walters harmless for any and all loss, liability,

4     claims, damage, and expense whatsoever arising out of, *inter alia*, their gross negligence and

5     based upon a violation of federal or state securities laws or a breach of the TICCM Contract.  *Id.*

6     at ¶ 14.  Therefore, Mr. Walters has pled indemnity and contribution with sufficient specificity

7     by pleading both the "factual and legal basis for claimant's entitlement to relief requested."

8         The Moving Parties demand that Mr. Walters specify whether the governing contract was

9     in writing, asserting that if it is oral, the contractual indemnity provision is invalid.  (Mot. at

10    17:25-28-18:1-8.)  However, asserting that some undefined contract is invalid because it may

11    have been an oral contract is misguided in this case because full performance by a party removes

12    a contract from the statute of frauds.  *Edwards Industries, Inc. v. DTE/BTE, Inc.*, 923 P.2d 569,

13    574 (Nev. 1996).   The pleadings in this action allege that the Moving Parties fully performed the

14    TICCM agreement referenced in the Third-Party Complaint – as evidenced by the undisputed

15    fact that Stallion Mountain was sold to a group of twenty-six tenant in common investors.

16    Therefore, the Moving Parties' assertion that Mr. Walters' indemnity and contribution claims

17    require an allegation specifying whether the contract is oral or written is nothing more than a red

18    herring because the Moving Parties' full performance under the contract renders any statute of

19    frauds argument irrelevant.

20        Additionally, the Moving Parties assert that if the Third-Party Complaint "is based on the

21    MBD Agreement, it does not state a claim because Walters is not a party to or beneficiary of the

22    Agreement." (Mot. at 18:13-14.)  As described above, the alleged MBD Agreement may not be

23    considered in ruling on this motion to dismiss because it is outside the pleadings and is both

24    unauthenticated and subject to dispute.  Furthermore, the Third-Party Complaint suggests that

25    Mr. Walters is, at minimum, a third-party beneficiary of the TICCM contract.  (Walters' Third-

1  Party Complaint at ¶ 5.)  Therefore, he may maintain an action against the Moving Parties for

2  contribution and indemnity.  *See Hemphill v. Hanson*, 366 P.2d 92, 94 at n.1 (recognizing that

3  "the right of a third party beneficiary, not a party to the contract, to maintain an action against the

4  promissor is established law in this state.")  Therefore, even if the alleged MBD Agreement was

5  considered, the addition of this information does not affect whether the facts alleged in the Third-

6  Party Complaint establish the necessary elements of a claim for relief.

7        Similarly, the Moving Parties' claim that Mr. Walters is required to specifically explain

8  the terms that were breached not only seeks superfluous information not required under federal

9  pleading requirements, but is also something that cannot be fully determined without discovery.

10  Mr. Walters' allegations against the Moving Parties arise directly from the FSP Stallion Entities'

11  allegations against Mr. Walters in this action, which assert that the Stallion Mountain sale –

12  which the Moving Parties facilitated – failed to comply with all applicable federal and state

13  securities laws and regulations and that there was a failure to ensure that all investors met the

14  Investor Suitability Requirements before being permitted to participate in the Stallion Mountain

15  transaction.  This is stated in Mr. Walters' Third-Party Complaint against the Moving Parties –

16  including direct references to the TIC Defendants' claims against Mr. Walters – and the Moving

17  Parties cannot claim they have not been provided notice of what Mr. Walters is alleging against

18  them.  Mr. Walters sets forth sufficient facts to establish all necessary elements of a claim for

19  relief such that the Moving Parties have adequate notice of the nature of his claims and the relief

20  he seeks.  Therefore, dismissal of Mr. Walters' claims is improper and the Motion should be

21  denied.

22        **3.**      **If this Court Finds that Additional Facts are Necessary to put the Moving**

23                  **Parties on Notice of Mr. Walters' Claims, Mr. Walters Requests Leave to Amend.**

24        When a complaint can be amended to state a claim for relief, leave to amend, rather than

25  dismissal, is the preferred remedy.  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

25

1  (9th Cir. 2003) (Dismissal without leave to amend is inappropriate unless it is clear that the

2  complaint could not be saved by amendment); *see also City of Los Angeles,* 250 F. 3d at 692.

3  Such leave to amend should be "freely given" when justice requires. *Eminence Capital*, 316

4  F.3d at 1052. Therefore, if this Court finds that additional facts are necessary to put the Moving

5  Parties on notice of Mr. Walters' claims, Mr. Walters respectfully requests that such leave be

6  granted to amend the Third-Party Complaint.

7  <center>**IV.     CONCLUSION**</center>

8       Abstention on Mr. Walters' Third-Party claims is precluded because the state action is

9  incapable of disposing of all claims presented in this action. The Moving Parties have failed to

10  establish that exceptional circumstances exist warranting a stay or dismissal since (i) this case

11  does not involve the disposition of property, (ii) the federal and state forums are equally

12  convenient, (iii) granting the Moving Parties' request to stay or dismiss Mr. Walters' Third-Party

13  Complaint will not avoid piecemeal litigation, (iv) both the federal and state forums are adequate

14  to protect the parties' rights, (v) there is no indication that Mr. Walters' Third-Party Complaint in

15  federal court was filed to avoid an adverse ruling or take advantage of federal court rules, and

16  (vi) the fact that the state court action has progressed slightly further than the federal court action

17  is insufficient to warrant the abstention on Mr. Walters' Third-Party Complaint. As such, the

18  *Colorado River* analysis weighs in favor of this Court retaining jurisdiction over the Third-Party

19  Complaint because the "heavy presumption" favoring jurisdiction has not been overridden.

20       Additionally, contrary to the Moving Parties' assertion, there is no basis for this Court to

21  decline to exercise supplemental jurisdiction over Mr. Walters' Third-Party Complaint.

22  Furthermore, Mr. Walters has pled his claims for indemnity and contribution in the Third-Party

23

24

25

1  Complaint with sufficient specificity for purposes of Fed. R. Civ. P. 12(b)(6).  For the above

2  stated reasons, Mr. Walters respectfully requests that Plaintiffs' Motion to Dismiss be denied, or

3  in the alternative, that Mr. Walters be permitted to amend the Third-Party Complaint.

4        DATED this 27th day of July 2009.

5                  BAILEY❖KENNEDY

6

7                By:  _/s/ Kimberly R. McGhee_____

8                      DENNIS L. KENNEDY

                    KIMBERLY R. MCGHEE

9                      CRAIG A. HENDERSON

                    8984 Spanish Ridge Avenue

10                      Las Vegas, Nevada 89148

11                      Attorneys for Defendant/Counterclaimant/

                    Third-Party Plaintiff WILLIAM T. MR.

12                      WALTERS, and Defendants GOLF CLUB OF

                    NEVADA, INC., MR. WALTERS GOLF, a

13                      division of THE MR. WALTERS GROUP, and

                    LAS VEGAS PREFERRED TEE TIMES, LLC

14

15

16

17

18

19

20

21

22

23

24

25

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

1

**CERTIFICATE OF SERVICE**

2        In accordance with Fed. R. Civ. P. 5, I hereby certify that on the 27th day of July, 2009, a

3  copy of the foregoing OPPOSITION OF WILLIAM T. WALTERS TO PLAINTIFFS AND

4  COUNTERDEFENDANTS' MOTION TO DISMISS CERTAIN COUNTERCLAIMS, OR IN

5  THE ALTERNATIVE, TO STAY SUCH CLAIMS was served on the parties by CM/ECF/E-

6  Mail and the following party by U.S. Mail, postage pre-paid and addressed as follows:

7

8  John P. Aldrich, Esq.
   ALDRICH LAW FIRM, LTD.
   1601 S. Rainbow Blvd., Ste. 160
9  Las Vegas, NV 89146
   Attorneys for Stallion Mountain
10

11

Kyle O. Stephens, Esq.
Larson & Stephens, LLC
810 S. Casino Center Blvd., #104
Las Vegas, NV 89101
*Attorneys for Michael Luce, Joe Munsch,
Fairway Signature Properties LLC,
Evergreen Alliance Golf,Limited, LP, and
Stallion Mountain Leaseco, LLC*

12  Christopher F. Wong, Esq.
    Adam J. Thurston, Esq.
13  Ryan S. Fife, Esq.
    Eisenberge Raizan Thurston & Wong,
14  LLP
    10880 Wilshire Blvd., 11th Floor

Los Angeles, CA 90024
15  *Attorneys for Plaintiffs, FSP Stallion 1
    LLC*
16  *through FSP Stallion 26, LLC, inclusive*

Thomas N. FitzGibbon
Pfeiffer Thigpen FitzGibbon & Ziontz LLP
233 Wilshire Blvd.
Suite 220
Santa Monica, CA 90401
*Attorneys for Third-Party Defendants
TIC Capital Markets, Inc. and
Direct Capital Securities, Inc.
(VIA US MAIL)*

17  Doris Nehme-Tomalka, Esq.
    NEHME-TOMALKA & ASSOCIATES
18  2620 Regatta Drive, Suite 102
    Las Vegas, Nevada 89128
19  Attorneys for TIC Capital Markets, Inc.
    *and Direct Capital Securities, Inc.
20  (VIA US MAIL)*

21

22

23        */s/ BonnieO'Laughlin*
          *Bonnie O'Laughlin*, an employee with
          BAILEY❖KENNEDY

24

25

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148
PHONE (702) 562-8820
FAX (702) 562-8821

# Exhibit 1

# Exhibit 1

1
2

## DECLARATION OF KIMBERLY R. McGHEE IN SUPPORT OF WILLIAM T. WALTERS' OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO DISMISS OR STAY THE THIRD-PARTY COMPLAINT OF WILLIAM T. WALTERS

3
4

I, Kimberly R. McGhee, declare as follows:

5

1.      I am an attorney with the law firm of Bailey❖Kennedy, counsel of record for

6

Defendant/Counterclaimant/Third-Party Plaintiff William T. Walters in the case of *FSP Stallion*

7

*1, LLC, et al.*, *v. William T. Walters, et al.*, Case No. 2:08-cv-01155, pending before this Court.

8

2.      No discovery in either this action or the state action has occurred that is

9

specifically directed at the claims relating to Mr. Walters and the Moving Parties.  Instead,

10

discovery which occurred in the state action was directed at defending and prosecuting claims

11

with Community Bank of Nevada.

12

3.      With regard to discovery conducted relating to Mr. Walters' claims for indemnity

13

and contribution against the Moving Parties, neither action has progressed further than the other.

14

I declare under penalty of perjury under the law of the State of Nevada that the foregoing

15

is true and correct.

16

EXECUTED on this 27th day of July, 2009.

17
18

    */s/ Kimberly R. McGhee*
    KIMBERLY R. McGHEE

19
20
21
22
23
24
25
26
27
28

BAILEY❖KENNEDY
8984 SPANISH RIDGE AVENUE
LAS VEGAS, NEVADA 89148-1302
PHONE (702) 562-8820
FAX (702) 562-8821