Thomas N. FitzGibbon (*Admitted Pro Hac Vice*)
**PFEIFFER THIGPEN FITZGIBBON & ZIONTZ LLP**
233 Wilshire Boulevard, Suite 220
Santa Monica, California 90401
Tel: (310) 451-5800
Fax: (310) 496-3175
E-mail: tnf@ptflaw.com

Doris Nehme-Tomalka
**NEHME-TOMALKA & ASSOCIATES**
2620 Regatta Drive, Suite 102
Las Vegas, Nevada 89128
Tel: 702-240-5280
Fax: 702-240-5380
E-mail: doris@nehme-tomalka.com

Attorneys for Counterdefendants
*TIC Capital Markets, Inc.; Direct Capital Securities, Inc.*

# UNITED STATES DISTRICT COURT

# DISTRICT NEVADA

| | |
|---|---|
| FSP STALLION 1, LLC, a Nevada limited liability company, et al.<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL F. LUCE, an individual, et al.<br><br>Defendants. | CASE NO.: 2:08-CV-01155-PMP-PAL<br>[Assigned to the Hon. Philip M. Pro]<br><br>**REPLY BRIEF OF COUNTERDEFENDANTS TIC CAPITAL MARKETS, INC. AND DIRECT CAPITAL SECURITIES, INC. IN SUPPORT OF MOTION TO DISMISS THE COUNTERCLAIMS OF FAIRWAY SIGNATURE PROPERTIES, LLC AND RELATED PARTIES**<br><br>**Oral Argument Requested** |
| EAGL, LEASECO, FAIRWAY SIGNATURE PROPERTIES, LLC, et al.<br><br>Counterclaimants,<br><br>vs.<br><br>FSP STALLION 1, LLC, et al.<br><br>Counterdefendants. | |
| AND RELATED THIRD PARTY CLAIMS. | |

PTFDOCS-#40331-v1-Reply_re_Fairway_Counterclaim_Aug_09

REPLY BRIEF OF DEFENDANTS TIC CAPITAL MARKETS, INC. AND DIRECT CAPITAL SECURITIES, INC. IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS

Counterdefendants TIC Capital Markets, Inc. ("TICCM") and Direct Capital Securities, Inc. ("DCS")(collectively the "Defendants" or the "Moving Parties") reply to the Opposition of Counterclaimants Evergreen Alliance Golf Limited, L.P. ("EAGL"), Fairway Signature Properties, LLC ("Fairway"), Stallion Mountain Leaseco, LLC ("LeaseCo"), Joe R. Munsch ("Munsch"), and Michael F. Luce ("Luce") (collectively "Claimants")[1] with respect to the Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6) of the Moving Parties (the "Motion") as set forth below.

**I.      INTRODUCTION.**

The Opposition of Claimants tries to obfuscate the key issues before the Court and is not persuasive because:

- Claimants have admitted they contend the Claims are made under the Engagement Agreement which has a mandatory forum selection clause that requires litigation under that agreement to be in Los Angeles.[2]

- Claimants have failed to carry their burden to show the forum selection clause is not enforceable under the controlling law set forth in the *Bremen* case.

- Whether under the Engagement Agreement or the MBD Agreement, California law substantively governs the Claims and it requires greater specificity for the allegations, including whether the purported contract is oral or written. *See e.g.* 430.10(g); *Moya v.*

---

[1]     For some reason the Counterclaimants, who are referred to as the "Claimants" for the reasons described in this footnote, denominated their claims against Moving Parties as Counterclaims when it appears that they should have been brought as Third Party Claims. Certainly none of the Moving Parties were plaintiffs in this action or had brought any claims against the Claimants at the time the Counterclaims were filed. To the extent it affects the venue analysis, the claims should substantively be considered third-party claims and they will be referred to as the "Claims" rather than "Counterclaims."

[2]     *See* Opposition, page 3, lines 22-23.  There is a dispute over whether the Engagement Letter was ever executed, but Claimants contend (but do not actually allege) it was executed and therefore are bound by its terms, including the forum selection clause requiring disputes to be decided in Los Angeles. The intentional lack of specificity in the pleading cannot be used by Claimants to avoid a chosen venue.

Pfeiffer Thigpen FitzGibbon & Ziontz LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

*Northrup*, 10 Cal. App. 3d 276 (1st Dist. 1970).[3]/ The result is the same under federal law based on the *Twombly* case.

- Claimants have admitted in the Opposition that the Claims are fatally uncertain and that they do not include the necessary material terms, for example they argue: "so much uncertainty pervades the circumstances surrounding the formation and execution of the contracts at issue…" (Opposition, page 8, lines 3-5.)
- Claimants have made most of their arguments about contentions made in the Opposition but that simply do not appear in their pleading. (*See e.g.* "Luce, Munsch, EAGL and LeaseCo are third-party beneficiaries to the MBD Agreement." Opposition, page 4, lines 11-12.) No quantity or quality of argument can change that the pleading is simply deficient as it refers to one contract, yet they argue about two.
- Claimants have blended the venue and jurisdiction analyses, which is improper.
- They have the judicial economy analysis backwards, as it would be most efficient to separate the state law indemnity claims and have them decided after the main action is resolved. If the Plaintiffs do not prevail, then there is no need for indemnity, or at least the amount at issue will be determined.

In short, the Court is left with two choices at this stage: (1) grant the Motion to Dismiss now based on improper venue for the Claims, which would require the Claims to be pursued in Los Angeles, or (2) grant the Motion to Dismiss, with leave to amend, because the Claims are simply insufficiently pled to allow the Moving Parties to fairly defend. It is certainly unfair and legally wrong to permit the Claims to proceed here as pled, given the intentional lack of clarity in the pleading.

Given the appropriate sequencing for resolving pleading challenges based on the merits and venue, venue issues should be resolved prior to decisions on the merits, such as to

---

[3]/ Claimants argue that Nevada is a notice pleading state, (Opposition, page 4, lines 14-15), but this argument is irrelevant because both the Engagement Agreement and the MBD Agreement contain a California choice-of-law provision. Under either federal or California (or likely Nevada as well), the Claims do not state claims for relief.

dismiss. Thus, the Court should either dismiss now based on improper venue, or at minimum require the Claimants to replead so the venue determination can be made with the additional facts that Claimants argue about but do not allege.

As an example that the Claims cannot stand as written, the Opposition even admits that the Claimants do not know who the parties to the contracts are, or their material terms. (Opposition, page 8, lines 2-3.) This certainly cannot be enough to proceed, and it is impossible to defend such claims when they are artificially blended together. *See* Cal. Civ. Proc. Code § 430.10(g) (2009) (stating grounds for challenge to pleading where "In an action founded upon a contract, it cannot be ascertained from the pleading whether the contract is written, is oral, or is implied by conduct."); *see generally Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 fn. 3, 127 S. Ct. 1955, 1965 (2007) ( stating that "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests." and citing Wright & Miller that "Rule 8(a) 'contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented' and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it'").

In short, the Opposition has demonstrated no basis for the denial of the Motion, and Moving Parties respectfully request that it be granted.

## II. CLAIMANTS HAVE NOT CARRIED THEIR BURDEN TO SHOW THE FORUM SELECTION CLAUSE IS INAPPLICABLE.

The Opposition makes a variety of arguments against the Motion, but makes no real effort to challenge the controlling law set forth in the *Bremen* case about the enforceability of the venue selection clause in the agreement that is the basis of the allegations in the Claims. (Opposition, pages 6-8.) *See M/S Bremen v. Zapata Off-Shore Company*, 407 U.S. 1, 15, 92 S. Ct. 1907, 1916 (1972). The general presumption is that enforcement of a forum selection clause will be ordered unless it clearly would be "unreasonable and unjust, or the clause was invalid for such reasons as fraud or overreaching." *Id.* at 15. There are only three exceptions to this

PTFDOCS-#40331-v1-Reply_re_Fairway_Counterclaim_Aug_09

-4-

REPLY BRIEF OF DEFENDANTS TIC CAPITAL MARKETS, INC. AND DIRECT CAPITAL SECURITIES, INC. IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS

Pfeiffer Thigpen FitzGibbon & Ziontz LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

presumption: (1) inclusion of the clause was the product of fraud, undue influence or overreaching, (2) enforcement would be so fundamentally unfair and seriously inconvenient to one party that it would effectively deprive that party of its day in court, or (3) enforcement would contravene a strong public policy of the forum in which suit is brought. *Id.* at 15-18.

In light of this clear law, the Opposition argues the clause is not enforceable, suggesting that the general venue statute, 28 U.S.C. § 1391, constitutes "strong public policy" in a statute that would override the parties choice of a forum. (Opposition, page 6, lines 25-27.) This is simply not the law, as the public policy referred to in the *Bremen* is for specific underlying laws, such as the civil rights laws or a state's franchise laws that might be frustrated by requiring an action to be pursued in a specific forum. *See Red Bull Assocs. v. Best Western Int'l, Inc.*, 862 F.2d 963, 967 (2d Cir. 1988); *Jones v. GNC Franchising, Inc.*, 211 F. 3d 495, 497 (9th Cir. 2000). The general federal venue statute simply is not the type of "strong public policy" contemplated by the exception. In any event, there are no such concerns in this instance because the claims asserted by the Claimants are garden variety state law claims for indemnity between private parties. Even if the claims at issue involved the securities laws, there is no public policy to deny enforcement of a forum selection clause in that instance. *Richards v. Lloyd's of London*, 135 F. 3d 1289, 1295-96 (9th Cir. 1998)(enforcing venue selection clause in claim under the securities laws).

In light of the requirements of the *Bremen* case that the party opposing the motion must overcome the presumption of enforceability based on one of the three exceptions, it is manifestly clear that Claimants have not carried their burden in this instance and that the clause should be enforced and the Motion granted.

### III. CLAIMANTS HAVE ADMITTED THEIR PLEADING IS INSUFFICIENT.

Whether under California law, or federal law, the applicable pleading standard requires much more than is present in the Claims. Under California law, a claim based on a express contract must contain the material terms of the agreement and must make it clear whether the alleged contract is oral or written. Cal. Civ. Proc. Code § 430.10(g) (2009), *Moya v. Northrup*, 10 Cal. App. 3d 276 (1st Dist. 1970). Under federal law, as recently confirmed by the

Pfeiffer Thigpen FitzGibbon & Ziontz LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

Supreme Court, a pleader must make a 'showing,' rather than a blanket assertion, of entitlement to relief, which includes factual allegations to provide not only "fair notice" of the nature of the claim, but also the "grounds" on which the claim rests," which "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 fn. 3, 127 S. Ct. 1955, 1965 (2007).

In the Opposition the Claimants effectively admit that their pleading is insufficient:

- "At this early stage of the litigation, it is impossible to determine precisely what the finalized terms of the two agreements are…" (Opposition, page 7, lines 15-16);
- "Without the finalized contracts, material terms such as who the parties to the contract are remain unclear." (Opposition, page 8, lines 2-3);
- "In other words, so much uncertainty pervades the circumstances surrounding the formation and execution of the contracts at issue, dismissal of the breach of contract claim at this early stage in the litigation is inappropriate and discovery must be done to answer so many as yet unanswered questions." (Opposition, page 8, lines 3-6.)

In fact, these arguments are almost shocking in that Claimants effectively admit that they filed these Claims without appearing to know they have a good faith basis to allege them. *See* Fed. R. Civ. P. 11.

As the party asserting the Claims, they should at least know their own contentions: Who were the parties? Were they written? Were they oral? Were the agreements signed? Who signed the agreements? When were they signed? What do they believe are the material terms? Certainly their pleading does not include this information: "Counterclaimants entered into or were the intended third-party beneficiary **of a contract**, with DCS and TICCM" (Claims ¶ 201)(emphasis added). Why do they argue in the Opposition about two contracts, when the pleading clearly only refers to one?

Instead of basic factual pleading, they have intentionally made blanket allegations on behalf of parties they know were not associated with either agreement (*i.e.* EAGL), and have refused to specify any details about the various agreements, because they know that the Engagement Agreement was never executed *as a result of their own refusal* to sign it. At least the

PTFDOCS-#40331-v1-Reply_re_Fairway_Counterclaim_Aug_09

-6-

REPLY BRIEF OF DEFENDANTS TIC CAPITAL MARKETS, INC. AND DIRECT CAPITAL SECURITIES, INC. IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS

Pfeiffer Thigpen FitzGibbon & Ziontz LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

party executing it on behalf of the Claimants could have stated, under oath, in Opposition to this Motion that he or she signed it. There is no such declaration, and the Claims lack such an allegation. There is only one reason that these allegations were not made in the Claims—because they cannot be made in good faith. Note the intentionally vague argument in the Opposition: "TICCM and/or DCS signed an Engagement Agreement with the Walters Group, Fairway and/or other entities." (Opposition, page 3, lines 22-23.) The Claimants do not even argue (let alone allege) that this Engagement Agreement was executed by anyone on behalf of the Claimants. Given these fatal deficiencies, the Court should, at a minimum, require the Claimants to replead with facts sufficient to state a claim.

## IV. CLAIMANTS IMPROPERLY RELY ON ARGUMENT, NOT THE ALLEGATIONS TO OPPOSE THE MOTION.

The Opposition effectively acknowledges the Claims are insufficient because it relies almost exclusively on arguments which are simply not in the Claims at all. Examples of arguments against the Motion that are not pled in the Claims:

- TICCM and/or DCS signed an Engagement Agreement with the Walters Group, Fairway and/or other entities. (Opposition, page 3, lines 22-23.)
- DCS also signed the Managing-Broker Dealer Agreement ("MBD Agreement") with Fairway, whereby DCS agreed to market and sell the TIC interests in the Property. (Opposition page 3, lines 26-27, page 4, line 1.)
- Luce, Munsch, EAGL and LeaseCo are third-party beneficiaries to the MBD Agreement. (Opposition, page 4, lines 11-12.)
- The MBD Agreement contains several standard indemnification and contribution provisions in favor of the Luce Parties. (Opposition, page 4, lines 1-2.)
- The parties to the MBD Agreement, also referred to as the "TICCM contract" in the Counterclaim, are Fairway and DCS. (Opposition, page 4, lines 8-9.)
- Fairway was a party to both the Engagement Agreement and the MBD Agreement. Luce, Munsch, EAGL and LeaseCo were intended third-party beneficiaries of the two

PTFDOCS-#40331-v1-Reply_re_Fairway_Counterclaim_Aug_09

-7-   REPLY BRIEF OF DEFENDANTS TIC CAPITAL MARKETS, INC. AND DIRECT CAPITAL SECURITIES, INC. IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS

Pfeiffer Thigpen FitzGibbon & Ziontz LLP
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

contracts because LeaseCo operate the Stallion Mountain Property and EAGL managed the Property. (Opposition, page 9, lines 22-24.)

If these are the facts purportedly known to Claimants, why are they not in the Claims? These crucial matters cannot be omitted from the pleading as they affect not only the substance of the claims, but also how and where the claims are resolved: In Nevada? In California? Certainly both agreements confirm that California law applies.

Likewise, Claimants also argue, in an internally inconsistent manner, that their claims are made under the MBD Agreement, and therefore that the forum selection clause should not be enforced.[4] (Opposition, page 7, lines 14-20.) It is entirely disingenuous for Claimants to argue that venue is not proper because the "TICCM contract" as alleged in the Claims does not have a forum selection clause. (Opposition, page 4, lines 9-10.) It is evident that the Claim does not contain the allegations argued in the Opposition. It does not mention either the Engagement Agreement or the MBD Agreement and does not allege that either was executed; in fact, the Claim does not state whether the TICCM contract is oral or written, which is essential because indemnity contracts must be written to be enforceable. All of these shortcomings are important so that the Court can fairly and properly decide how to deal with these Claims—either by granting the dismissal based on improper venue, or on the merits. For complaining parties to argue that they need discovery to determine what they are claiming is nonsense and is an acknowledgment that the claims they have pled are insufficient and alleged in an intentionally opaque manner to avoid dismissal.

In short, these acknowledgments in the Opposition confirm that the existing pleading is not only procedurally improper (as they are not Counterclaims), but also deficient enough that it cannot be allowed to remain as the operative document as it would deny the Moving Parties their rights to fairly defend as confirmed in the *Twombly* case.

---

[4] Claimants argue at cross purposes: (1) that the MBD Agreement cannot be considered in connection with the Motion, (Opposition, page 5, lines 5-14), and (2) that "this Court can nonetheless exercise jurisdiction based upon the MBD Agreement." (Opposition, page 7, lines 19-20.)

## V. ADDITIONAL REASONS TO GRANT THE MOTION EXIST.

### A. The Opposition Improperly Blends the Jurisdiction and Venue Analyses.

The Opposition also appears to conflate the jurisdiction and venue analyses, which are not the same. *FS Photo, Inc. v. PictureVision, Inc.*, 48 F.Supp.2d 442, 444 (D. Del. 1999). For example, Claimants state: "Venue is proper because the United States District Court, District of Nevada has personal jurisdiction over the entities." (Opposition, page 3, lines 5-6.) Jurisdiction is not at issue in this Motion under Rule 12(b)(3), but instead whether venue is proper for these claims. Given that there is an enforceable forum selection clause, the existence of jurisdiction over the parties is irrelevant to the analysis under *Bremen*.

### B. There Are No Real Property Claims At Issue.

Claimants argue that the matter should remain in Nevada because the golf course is located in Las Vegas. (*See* Opposition, page 7, lines 10-13.) This is not a valid basis to deny the Motion as there are no real property claims in either the Counterclaims or Plaintiffs' First Amended Complaint. True, the course is in Las Vegas, but that has nothing to do with where claims for breach of contract and indemnity should be adjudicated. Under the applicable law, there is no basis to deny the forum selection clause based upon the procedural posture of this case.

### C. On the Merits, No Claim Is Stated.

If the Court elects to consider the Claims on a substantive basis under Rule 12(b)6) at this time, Claimants know full well that, by the very terms of either the Engagement Agreement or the MBD Agreement, most or all of the Claimants are not entitled to indemnity under either agreement and that no Claimant has ever sought indemnity from Moving Parties under the MBD Agreement, and have not given notice of such indemnity demand, as required by the MBD Agreement. (*See* MBD Agreement, Section 10.2)

Likewise, considering the substance of the pleading, it also fails because it alleges that the investors "represented that they qualified as sophisticated investors and met the Investor Suitability Requirements" (Claims ¶ 122), and the Seventeenth and Eighteenth Counterclaims This is consistent with the investors' Complaint, which DOES NOT allege that the investors

**Pfeiffer Thigpen FitzGibbon & Ziontz LLP**
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

1  did not meet the Investor Suitability Requirements, but only that some of them were not
2  sophisticated.  The investor Plaintiffs, master of their own claims, have not made these
3  allegations nor sought recovery under this theory—that they were unaccredited or not
4  suitable.  How can the Claimants seek indemnity for a theory not at issue?  Certainly this
5  allegation by the investors is not sufficient to trigger any indemnity rights in favor of the
6  Claimants under any of the documents—the Engagement Agreement or the MBD
7  Agreement. This example shows why claims for indemnity must be in writing, otherwise any
8  person would be subject to having to defend claims based on a purported oral indemnity,
9  with factual issues always arising about the scope of the indemnity.

10  The proper way these indemnity claims should be handled is that Claimants should
11  allege the agreements, who are the parties and beneficiaries, and what are the exact terms of
12  the indemnity, so that the Court can determine where and how to resolve the claims.
13  Allowing the current intentionally vague pleading to remain operative and requiring it to be
14  defended in Nevada is simply unfair to DCS and TICCM, given the facts clearly known to the
15  parties and that are before the Court through this Motion.

16  **D.  If Not Dismissed, The Indemnity Claims Should Be Severed.**

17  As indicated above, the indemnity claims should be dismissed and required to be
18  brought in California as they are subject to California law and the parties chose California as
19  their exclusive forum.  Further, even if those claims were remain in this Court, they should be
20  severed and stayed until the underlying action is concluded, or at minimum, set for trial well
21  after the main action is concluded.  Claimants make multiple misleading arguments about
22  judicial efficiency in suggesting the claims should be adjudicated now in the main action. For
23  example, they argue: "Forcing the Luce Parties to assert Counterclaims against Moving
24  Parties in Los Angeles, California would needlessly and inefficiently create duplicative
25  litigation in California in an effort to resolve claims arising out of exactly the same events and
26  transactions involving real property located in Clark County, Nevada."  (Opposition, page 7,
27  lines 10-13.)  These contentions are not persuasive on multiple levels:
28

PTFDOCS-#40331-v1-Reply_re_Fairway_Counterclaim_Aug_09

-10-    REPLY BRIEF OF DEFENDANTS TIC CAPITAL MARKETS, INC. AND DIRECT CAPITAL SECURITIES, INC. IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS

**Pfeiffer Thigpen FitzGibbon & Ziontz LLP**
233 Wilshire Blvd., Suite 220
Santa Monica, California 90401

1  - The California litigation would not be duplicative but if properly managed would likely
2    be mooted by the resolution of the main action here;
3  - The issues about whether indemnity is available are matters of contract which are
4    completely independent of the facts relating to the underlying claims of Plaintiffs and
5    simply do not involve Plaintiffs; and
6  - Neither the First Amended Complaint nor the Claims by Claimants involve any real
7    property claims, but instead securities fraud claims and related state law claims that
8    happen to involve a real estate transaction.

Were the contentions of Claimants correct, indemnity claims would never be severed, but as is well known, they are frequently severed for judicial economy. *See* Fed. R. Civ. P. 14(a)(4); *see also e.g. Williams v. Ford Motor Credit Co.*, 627 F.2d 158, 161 (8th Cir. 1980).

At the end of the day, the Claims against DCS and TICCM by Claimants are wholly distinct from and completely derivative of the underlying claims of the investor Plaintiffs and it makes much more sense for the indemnity claims to be adjudicated after the main claims. For example, the determinations, decisions and findings in the underlying action will guide whether Claimants are entitled to indemnity at all or whether TICCM and DCS are entitled to indemnity from Fairway or the other Claimants.

### VI.   CONCLUSION.

Based on the foregoing, Moving Parties respectfully request that the Court dismiss the Fourteenth, Fifteenth and Sixteenth Causes of Action in the "Counterclaim" against DCS and TICCM, and either require the claims to be brought in Los Angeles, or that they be repleaded here so the Court can fairly determine how those claims should be handled—either dismissed, severed or kept as part of the main case.

//
//
//
//
//

1  DATED: August 31, 2009        **PFEIFFER THIGPEN FITZGIBBON & ZIONTZ LLP**

         *[signature]*

         THOMAS N. FITZGIBBON
         *Admitted Pro Hac Vice*
         233 Wilshire Blvd., Suite 220
         Santa Monica, California 90401
         Tel: (310) 451-4325
         Attorneys for Counterdefendants
         *TIC Capital Markets, Inc.; Direct Capital Securities, Inc.*

PTFDOCS-#40331-v1-Reply_re_Fairway_Counterclaim_Aug_09

-12-

REPLY BRIEF OF DEFENDANTS TIC CAPITAL MARKETS, INC. AND DIRECT CAPITAL SECURITIES, INC. IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS

# **CERTIFICATE OF SERVICE**

I hereby certify that a copy of **REPLY BRIEF OF COUNTERDEFENDANTS TIC CAPITAL MARKETS, INC. AND DIRECT CAPITAL SECURITIES, INC. IN SUPPORT OF MOTION TO DISMISS THE COUNTERCLAIMS OF FAIRWAY SIGNATURE PROPERTIES, LLC AND RELATED PARTIES** was filed electronically with the Clerk of the Court on August 31, 2009, and will be served electronically to designated CM/ECF participant counsel through the court's electronic filing system and mail served to the other interested parties in this action who are not on the CM/ECF service list, if any.

Ryan Fife - rfife@ertwllp.com
Edward Gartenberg - egartenberg@ggwslaw.com
Craig A Henderson - chenderson@baileykennedy.com, klebel@baileykennedy.com
Dennis L. Kennedy - dkennedy@baileykennedy.com, srusso@baileykennedy.com
Kimberly R. McGhee - kmcghee@baileykennedy.com, bolaughlin@baileykennedy.com
Kristin Sciarra - ksciarra@ggwslaw.com
Kyle O Stephens - ecf@lslawnv.com, shac@lslawnv.com
Adam J Thurston - athurston@ertwllp.com
Christopher F Wong - cwong@ertwllp.com
Thomas N. FitzGibbon – tnf@ptflaw.com
Doris Nehme-Tomalka – doris@nehme-tomalka.com
John P. Aldrich – jaldrich@johnaldrichlawfirm.com

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 31, 2009, at Newbury Park, California.

/s/ Thomas N. FitzGibbon
Thomas N. FitzGibbon